**In the Matter of the ESTATE OF Elizabeth A. ROLCZYNSKI, Deceased.**

**Civ. No. 10579.**

Supreme Court of North Dakota.

May 23, 1984.

Spaeth & Schubert, Grand Forks, for John P. Rolczynski; argued by Arline Schubert, Grand Forks.

DePuy, Kopperud, Goulet & Hall, Grafton, for the Bank of Minto; argued by Daniel J. Crothers, Grafton.

GIERKE, Justice.

John P. Rolczynski, as personal representative of the estate of Elizabeth A. Rolczynski, appeals from the order of the County Court of Walsh County confirming the sale of certain estate property. We affirm.

Elizabeth A. Rolczynski died testate on December 3, 1978. Her nephew, John P. Rolczynski, was appointed personal representative of the estate on December 5, 1978. Elizabeth's will provided for cash bequests to her nephews, Dean and Stephen Rolzin, and directed the personal representative to pay all debts and funeral expenses. The will also directed that her

real property be sold and the proceeds divided among the three nephews:

"FOURTH, After the payment of such funeral expenses and debts, I direct that my executor should sell all real estate found in my name and more particularly all of the real estate property described as follows, to-wit:

All of Lots Seven (7) and Eight (8), Block Twenty-eight (28), Original Townsite of the City of Minto, North Dakota and buildings.

"FIFTH, I give and devise unto my nephews, Stephen Rolzin and Dean Rolzin, to share and share alike, fifty per cent (50%) of the proceeds from the sale of my real property listed in Fourth paragraph of this Will.

"SIXTH, I give and devise unto my nephew, John P. Rolczynski, the other remaining fifty per cent (50%) of the proceeds of the sale of my real property listed in the Fourth paragraph of this Will."

The only real property held by Elizabeth at the time of her death was her home in Minto. John listed the property with a real estate agency from July, 1979 to June, 1980, but it remained unsold. An appraisal of the property at that time valued it at $31,500.

On February 15, 1981, John borrowed $2,850 from the Bank of Minto and executed a promissory note in that amount. As security, John assigned his interest in the estate to the Bank. The assignment provided that the Bank was to be paid from estate funds owing to John if the note was not repaid by its due date. John failed to repay the note by its due date, and the Bank reduced its claim to a judgment against John.

On June 3, 1983, the Bank filed a petition in the probate court for settlement of the estate and distribution of the property. A hearing was held on July 12, 1983, and on August 9, the court issued its order directing John to sell the real estate. A public auction of the property was held on September 9, with a high bid of $27,200. On October 27, the court issued its order confirming the sale and directing John to execute proper conveyances of the property. John appeals from that order.

John has raised numerous issues which we deem to be irrelevant to the present appeal. The record below is replete with examples of John's attempts to introduce extraneous issues into the probate of his aunt's estate. These issues are not relevant in the probate of this estate, and they certainly do not constitute a valid excuse for delaying the sale of the property for what is now more than five years. Accordingly, we will address only those issues raised by John which are relevant to the present appeal.

John alleges that he had discretion as the personal representative to decide when and under what conditions the property would be sold, and that the court's order directing that the property be sold was "premature." In support of this contention, John points to the following provision in Elizabeth's will:

"I hereby authorize and empower my said personal representative, at any time he deems it advisable: to sell the property of my estate, or any part thereof, at public auction or at private sale, for such prices and upon such terms as he may judge best, and to convey the same by such deeds and instruments of conveyance and transfer as may be necessary; to mortgage, hypothecate, invest, reinvest, exchange, manage, control and in any way use and deal with any and all of said property; to accept any composition or security for any debt and to allow extended time for payment of any debt, and also to compromise and settle all accounts and matters belonging or relating to my estate; and generally to manage said estate as he deems it advisable. The above powers are given and granted to my said personal representative to do and exercise without application to any Court for leave or confirmation, unless the same is expressly required by law, and without giving any bond or security whatsoever."

As previously noted, the fourth paragraph of the will specifically directed that the real property be sold after payment of funeral expenses and debts.

■ When a personal representative is directed by the decedent's will to sell property, but there is no specific direction regarding the time it is to be sold, the personal representative has some measure of discretion to determine when the property should be sold. *See Bryant v. Fingerlos*, 138 Neb. 867, 871–873, 295 N.W. 896, 898–899 (1941). This discretion, however, is not unlimited. The personal representative has a fiduciary duty to act reasonably for the benefit of the heirs, creditors, and other parties interested in the estate. *Lindemann v. Lindemann*, 336 N.W.2d 112, 115–116 (N.D.1983). In acting as a fiduciary, the personal representative has a duty to settle and distribute the estate "as expeditiously and efficiently as is consistent with the best interests of the estate." Section 30.1–18–03(1), N.D.C.C. [U.P.C. § 3–703].

■ We conclude that when the will directs that estate property be sold, without fixing specific time limits for such sale, the personal representative must sell the property within a reasonable time in the best interests of the estate. *E.g., Brandt v. Phipps*, 398 Ill. 296, 311, 75 N.E.2d 757, 764 (1947); *Keller v. Schobert*, 13 Ill. App.3d 637, 639–640, 300 N.E.2d 800, 802 (1973), *aff'd*, 58 Ill.2d 137, 317 N.E.2d 510 (1974); *Hood v. Shively*, 31 S.W.2d 283, 285 (Mo.App.1930); *Bryant v. Fingerlos, supra*, 138 Neb. at 871–875, 295 N.W. at 898–900; *In re Crolly's Will*, 4 Misc.2d 221, 148 N.Y.S.2d 560, 563 (Sur.Ct.1956).

■ In the instant case, the court found that the personal representative has abused his discretion by unreasonably delaying the sale of the property. We agree. At the time of the hearing on the Bank's petition in July, 1983, the estate had been open for more than four and one-half years. John had made no real effort to sell the property for more than three years. The property was producing no income to the estate because John has been living in the house rent-free since Elizabeth's death.

It certainly would have been in the best interests of the estate to have sold the property shortly after Elizabeth's death, particularly in light of current interest rates on investments. While a personal representative may reasonably delay the sale of property in an attempt to secure a better price, such a delay may not continue indefinitely. *See Bryant v. Fingerlos, supra*, 138 Neb. at 871–873, 295 N.W. at 898–899. John has failed to demonstrate any valid reason for delaying the sale of the property for over four and one-half years. We conclude that the delay in this case was unreasonable, and the court was not acting "prematurely" when it ordered the sale of the property.

■ John also argues that the Bank had less restrictive alternatives available to protect its interests, and that the court therefore should not have ordered a sale of the property. Section 30.1–21–01(1), N.D.C.C. [U.P.C. § 3–1001], provides that any interested party may petition for an order of settlement of an estate any time after one year from the appointment of the personal representative. Section 30.1–17–07(1), N.D.C.C. [U.P.C. § 3–607], provides that any interested party may petition the court to issue an order to the personal representative to secure proper performance of his duties. The procedure employed by the Bank and the court in this case was not improper.

Furthermore, we note that the Bank made attempts to negotiate the matter with John, and in fact waited over a year and one-half after the note matured before filing the petition requesting that the proceeds of the estate be distributed. The note became due on November 1, 1981, and judgment on the note was entered against John on March 25, 1982. The Bank's attorney, by a letter dated April 29, 1983, indicated to John that the Bank was considering various alternatives to collect the judgment, but that it would hold off on collection efforts if John paid the interest which was then currently due. When John failed

to pay the interest, the Bank filed its petition on June 3, 1983.

We conclude that the court did not err in issuing its order directing that the property be sold.

■ John further argues that the court erred in confirming the sale, because the price obtained was below the market value. In its order confirming the sale, the court specifically found that the amount of the highest bid ($27,200) was not disproportionate to the value of the property and that a greater sum could not be obtained. We have thoroughly reviewed the record and conclude that this finding is not clearly erroneous. Rule 52(a), N.D.R.Civ.P. The evidence indicated that appraisals conducted before the sale valued the property at $26,750 and $25,000, respectively. An appraisal prepared for the personal representative within weeks after the auction sale valued the property at $26,600. The sum received for the property was higher than each of these appraisals, including the one prepared for the personal representative. The trial court did not err in ordering confirmation of the sale.

The order confirming sale of the property is affirmed.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., and EVERETT NELS OLSON, District Judge, concur.

OLSON, District Judge, sitting in place of VANDE WALLE, J., disqualified.