OPINION OF THE COURT
Larry M. Himelein, S.
Decedent Mary E. Little was admitted to the Cattaraugus County Nursing Home on February 1, 1994, and received Medicaid assistance during her stay. On November 7, 1994, Mrs. Little’s aunt, Gertrude Collins, died leaving a one-third general residuary legacy to Mary Little. On November 28, 1994, John Hart, counsel for the Gertrude Collins estate, wrote *154 to Mrs. Little and asked her to sign a waiver and consent for probate form. He testified that his usual practice is to include a copy of the probate petition which, in this case, noted that the Collins estate was valued between $250,000 and $300,000. The waiver was signed by Mrs. Little on December 1, 1994, and returned to Mr. Hart. John Lynch, the executor of the Collins estate, was appointed in December and .collected the assets, most of which were in the form of common stock.
On December 12,. 1994, Mrs. Little recertified for Medicaid although her husband actually signed the recertification on her behalf. The application noted that Mrs. Little expected an inheritance although the precise amount was not designated. In mid-April 1995, most of the Collins estate was liquidated and the following month Mrs. Little received a distribution of $90,000. She received a total distribution of $114,726 prior to her death on June 27, 1995.
The Social Services Department has filed a claim against Mary E. Little’s estate for $23,233.03, which they contend is the cost of providing care for her between November 7, 1994, when Gertrude Collins died, and June 27, 1995, when Mrs. Little died. Mary E. Little’s estate contends that since Mrs. Little received her first distribution from the Gertrude Collins estate in June 1995, the date of receipt of the legacy should be the earliest time she would be charged with having an "available resource” and thus, the Department’s claim should be denied in full. The issue that divides the parties is when the bequest to Mrs. Little becomes an "available resource” and thus permits the Department to recover funds expended for her care.
Social Services Law § 366 (2) (b) (1) provides that in determining eligibility for assistance, the Department "shall take into account only such income and resources, in accordance with federal requirements, as are available to the applicant or recipient”. 18 NYCRR 360-4.4 (a) (2) defines "liquid resources” as "assets which can be easily converted to cash such as * * * stocks”. Subdivision (a) (3) defines nonliquid resources as "assets which may not be converted easily to cash” and subdivision (b) (1) includes as available resources such easily liquidated resources "in the control of the applicant/recipient.” Thus, contends the executor, because Mrs. Little’s inheritance was neither "easily liquidated” nor "within her control,” it could not be considered an available resource until the time it was distributed to her.
In support of that position, the executor cites Matter of Scrivani (116 Misc 2d 204), Matter of Dumbleton v Reed (49 *155 AD2d 687), and Matter of Simmons v Van Alstyne (65 AD2d 869). In Scrivani, the conservator moved to renounce an inheritance to her charge in order to continue her charge’s eligibility for government medical benefits. The court noted that an incompetent cannot renounce an inheritance and thereby voluntarily suffer the loss of Medicaid eligibility. Ergo, the court would not permit the conservator to renounce the inheritance to her charge. In its decision, the court noted that the inheritance would be immediately subject to the claims of the incompetent’s creditors upon transfer to her. The executor here pounces on the language "upon transfer to her” in support of his contention that the inheritance must be transferred before it can be considered an available resource. However, nothing in that decision indicates that the nursing home would not be able to recover from the inheritance for care provided to the incompetent prior to the incompetent’s physical receipt of the inheritance.
Matter of Dumbleton v Reed (supra) was modified at 40 NY2d 586. The only issue in that case was whether FICA taxes deducted from one’s income should be considered "income available.” The Court of Appeals, in a four-to-three decision, held that it should not be so considered because under the Federal directive, it did not constitute income "actually available” (at 588). This court does not find that case to be relevant.
Simmons v Van Alstyne (supra) appears to have been decided more on procedural than substantive grounds. The Court’s holding was only that the denial and termination of medical assistance on a ground not contained in the notice of denial or termination issued by the Department and not litigated during the fair hearing was unlawful and must be set aside. The Court further noted that hearsay and conjectural evidence introduced by the Department at the fair hearing did not meet the test of substantial evidence on the issue of the availability of resources to the petitioners. Again, the case is of marginal benefit here; the issue there was what the Department had to show to establish that there were resources available.
The Department relies on Matter of Kuening v Perales (190 AD2d 1033), Matter of Tutino v Perales (153 AD2d 181), and Matter of Molloy v Bane (214 AD2d 171) in support of its position that the inheritance should be deemed a resource as of the date of Gertrude Collins’ death. In Kuening, the medical assistance recipient received a settlement in a wrongful death action. She then renounced any interest in the proceeds and returned the check. The Commissioner made a determination *156 that she made the transfer in order to qualify for public assistance and discontinued her benefits. The Fourth Department affirmed that determination. While the case is not precisely on point, the Court did note that all available resources must be utilized to eliminate or reduce the need for public assistance.
In Tutino (supra), the issue was whether the Commissioner could require a person who was both the settlor and income beneficiary of an inter vivos trust to assign her right to seek an allowance from principal as a prerequisite to the granting of medical assistance. The Court answered in the affirmative and, thus, the Commissioner’s determination to withhold benefits until such an application was made was not deemed to be arbitrary or capricious. The case is also not precisely on point since the executor here is not claiming that receipt of the inheritance would not disqualify Mrs. Little; the issue is whether the disqualification applies as of the date of death of Gertrude Collins or the date the bequest was received by Mrs. Little.
Molloy v Bane (supra) is similarly not precisely on point. As in Scrivani (supra), the issue was the renunciation of all testamentary or intestate distributions. The Court held that while one may renounce such a disposition, the renunciation has the consequence of losing one’s eligibility for Medicaid. The Court noted some lower court decisions to the contrary and overruled those within the Second Department.
However, none of these cases address the specific issue of at what point the inheritance becomes an available resource of the recipient and thus must be considered for Medicaid eligibility. In Matter of Dankner (86 Misc 2d 1081), the Surrogate in Erie County noted that a renunciation is retroactive to the date of death of the testator and, thus, must be treated as if no inheritance or gift ever passed to or vested in the person renouncing (see also, Matter of Schiffman, 105 Misc 2d 1025). That had the effect of making the gift free from the claim of creditors. It would follow logically that if the renunciation of a bequest is retroactive to the date of the testator’s death, a non-renounced bequest must be deemed to be effective as of the date of the testator’s death.
In Matter of Flynn v Bates (67 AD2d 975), a nursing home patient was denied Medicaid benefits because of her failure to exercise her statutory right of election against the will of her deceased husband. Thus, even though she never received her spousal share, it was deemed an available resource. That logic would appear to reject the executor’s contention here that the inheritance was not an available resource until received. More *157 over, were the executor correct, distributions could, and undoubtedly would, be deliberately delayed in order to preserve a beneficiary’s Medicaid eligibility as long as possible.
Accordingly, the court finds that the Department is entitled to be reimbursed $23,233.03, reflecting the cost of Mrs. Little’s care from November 7, 1994 until June 27, 1995.