2001 ND 16

Roland ECKES, Personal Representative of the Estate of Hattie C. Hillestad, deceased, Petitioner and Appellant,

v.

RICHLAND COUNTY SOCIAL SERVICES, Richland County Social Service Board, and North Dakota Department of Human Services, Respondents and Appellees.

No. 20000142.

Supreme Court of North Dakota.

Feb. 1, 2001.

Linda A. Catalano, Legal Assistance of North Dakota, Fargo, ND, for petitioner and appellant.

Jean R. Mullen, Assistant Attorney General, Attorney General's Office, Bismarck, ND, for respondents and appellees.

KAPSNER, Justice.

[¶ 1]   Roland Eckes, personal representative of the estate of Hattie Hillestad, appeals the district court's affirmation of the decision of an administrative law judge ("ALJ"), adopted as the final order by the Department of Human Services ("Department"), disqualifying Hillestad from Medicaid benefits because assets of a residuary trust, of which she was a beneficiary, were "available" for the purpose of determining eligibility for Medicaid.   We hold the Department erred in construing the intent of Hillestad's deceased husband to allow Hillestad to invade the trust principal for her benefit, and based on that intent, the Department erred in determining Hillestad's gifts to her children were not substantial. The district court's judgment is reversed and remanded for further proceedings.

I

[¶ 2]   Hattie Hillestad was a beneficiary of her late husband's will, executed on November 16, 1973, creating a residuary trust for Hillestad's benefit.   The entire net income of the trust was to be paid to Hillestad for as long as she lived.   The trust also provided that if, in the trustee's judgment, the income from this trust and from all property accumulated during her lifetime was not sufficient to provide for Hillestad's "suitable support, care, necessities, and medical attention," then the trustee had the discretion to pay such sums from the principal of the trust for Hillestad's benefit, with the following instructions:

> It is my express direction that the principal of this trust not be invaded for the above-mentioned purposes until my said wife shall have exhausted all property held by her.   I have purposely avoided making gifts of my property to my children during my lifetime to assure that the income of this trust be as large as possible.   Therefore, in the event my said wife shall have made substantial gifts of her property to her children during her lifetime then I direct that no part of the principal of this trust be invaded for her benefit.

Further sections of the will devised the remaining principal and any undistributed income in the trust, upon the death of Hillestad, to her late husband's children or their descendants if the children were deceased.

[¶ 3]   When Hillestad's husband died in 1992, Hillestad was 88 years old, and she entered a basic care facility.   In 1993, she sold her house for $14,702, and also had other assets for a total of $42,762, of which she gave $20,000 to her two children.   In 1994, 1995, and 1996, Hillestad had an income of $9,185, $9,342, and $10,844, respectively.   During those three years, Hillestad gave gifts totaling $24,000 to her two children from her assets (i.e., $6,000 in 1994;   $6,000 in 1995;   and $12,000 in 1996). In 1997, Hillestad did not give any financial gifts to her children.   From 1992–1997, Hillestad's living expenses in the basic care facility were paid by a five-year insurance plan.

[¶ 4]   In 1998, Hillestad applied to Richland County Social Services ("County") for Medicaid benefits.   The County denied Hillestad Medicaid eligibility, stating her assets exceeded the maximum allowable of $3,000.   The County listed Hillestad's countable assets as $51,985, which included the principal of the trust from which Hillestad received income.   On appeal, the ALJ found the trust was an available asset to Hillestad for the purpose of qualifying for Medicaid benefits.   The ALJ's findings determined: (1) when the language of a will is unambiguous, the testator's intent must be determined from the language of the will, and the provision regarding substantial gifts is unambiguous and shall be determined relative to Hillestad's property at the time she made gifts to her children; (2) the meaning of "substantial" is "significantly great" or "considerable in quantity" and implies a comparison of one value with another, considering the extant circumstances;   (3) the intent of the trust is reasonably understood to be that Hillestad shall not make substantial gifts of her property to her children such as would unreasonably impair her ability to provide for her support from her income and assets;   (4) whether Hillestad's gifts to her children were "substantial" must be determined by comparing the value of the gifts with the value of Hillestad's income and assets at the time of making the gifts and the present and reasonably anticipated future costs of her support;   (5) the gift of $20,000 to her children in 1993 was not substantial, considering she had income and assets of $42,960, insurance paid her living expenses at the basic care facility, and she was 88 years old which militated against a need to conserve income and assets for her future support;   and (6) the 1994, 1995, and 1996 gifts totaling $24,000 to the children were "arguably substantial" as a greater part of her income and assets at the time of the gifts, but are "more reasonably considered not to be 'substantial gifts' within the intent and meaning of the . . . [t]rust," considering her advanced age and her basic care and living expenses

were paid by insurance.   The Department adopted the findings of the ALJ and affirmed the determination of the County that Hillestad was ineligible for Medicaid benefits.

[¶ 5]   Hillestad appealed to the district court, which upheld the Department's decision determining Hillestad was ineligible for Medicaid benefits because the trust assets were available to her and, therefore, her assets exceeded the maximum amount permitted by law.   In determining whether Hillestad's gifts to her children were substantial, thereby foreclosing availability of the trust principal, the district court concluded the Department could reasonably consider the value of Hillestad's income and assets at the time she made the gifts to her children, as well as the present and reasonably anticipated future costs of Hillestad's support.   The district court concluded a "reasoning mind could reasonably determine" the evidence supported the Department's finding that Hillestad's gifts to her children were not substantial in relationship to her property at the time she gave the gifts.   Hillestad appealed to this Court.   Hillestad died on January 6, 2001, and her personal representative was substituted as party pursuant to N.D.R.App.P. 43.

II

[¶ 6]   When an administrative agency decision is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency, rather than the decision and findings of the district court.   *Kryzsko v. Ramsey County Soc. Servs.*, 2000 ND 43, ¶ 5, 607 N.W.2d 237.   Under N.D.C.C. §§ 28-32-19 and 28-32-21, we affirm the agency's decision if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, its decision is in accordance with the law and does not violate the claimant's constitutional rights, and if the agency's rules or proce-

dures did not deprive the claimant of a fair hearing. *Kryzsko,* at ¶ 5. When reviewing the agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency. *Id.* Rather, we determine whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence based on the entire record. *Id.* The agency's decisions on questions of law are fully reviewable by this Court. *Wahl v. Morton County Soc. Servs.,* 1998 ND 48, ¶ 4, 574 N.W.2d 859.

[¶ 7] When determining eligibility for Medicaid, the Department considers whether the applicant has sufficient assets to meet the costs of necessary medical care and services. N.D.C.C. § 50–24.1–02. No person may be found eligible for Medicaid unless the total value of that person's assets do not exceed $3,000. N.D.Admin.Code § 75–02–02.1–26(1). In making this eligibility determination, all assets available to the applicant are considered. N.D.Admin.Code § 75–02–02.1–25(1). Assets held in trusts are not exempted from consideration to the extent these assets are available to the applicant. N.D.Admin.Code § 75–02–02.1–31.

[¶ 8] When construing a trust instrument, this Court's primary objective is to ascertain the settlor's intent, which is a question of fact. *Hecker v. Stark County Soc. Serv. Bd.,* 527 N.W.2d 226, 229 (N.D.1994). We uphold and implement the settlor's intent to the extent it does not contravene public policy. *Id.* at 230. When a trust instrument is unambiguous, the settlor's intent is ascertained from the language of the trust document. *Id.* Whether a trust is ambiguous is a question of law, fully reviewable on appeal. *Id.* An instrument is ambiguous if its language is susceptible to more than one reasonable interpretation. *In re Estate of Flynn,* 2000 ND 24, ¶ 7, 606 N.W.2d 104.

## III

[¶ 9] The Department argues the plain language of the trust unambiguously demonstrates Hillestad's late husband's intent was to create a support trust providing for Hillestad's "suitable support, care, necessities, and medical attention," not only from the income of the trust but also by invading the principal. We disagree.

## A

[¶ 10] The settlor's intent is crucial in determining the nature and extent of the beneficiary's interest in the trust. *Bohac v. Graham,* 424 N.W.2d 144, 146 (N.D.1988) (citing Restatement (Second) of Trusts § 128 (1959)). The settlor's intent determines whether a trust is classified as a support or a discretionary trust, which in turn determines what portion of the trust is available to an applicant for the purpose of qualifying for Medicaid benefits. *Hecker v. Stark County Soc. Serv. Bd.,* 527 N.W.2d 226, 230 (N.D.1994). A support trust essentially provides the trustee "shall pay or apply only so much of the income and principal or either as is necessary for the education or support of a beneficiary." *Id.* at 229 (quoting Restatement (Second) of Trusts § 128 cmt. 1 (1959)). A support trust allows a beneficiary to compel distributions of income, principal, or both, for expenses necessary for the beneficiary's support, and an agency may consider the support trust as an available asset when evaluating eligibility for assistance. *Hecker,* at 229.

[¶ 11] Conversely, a discretionary trust grants the trustee "uncontrolled discretion over payment to the beneficiary" and may reference the "general welfare" of the beneficiary. *Id.* at 230 (quoting Restatement (Second) of Trusts § 128 cmt. d (1959)). Because the beneficiary of a discretionary trust does not have the ability to compel distributions from the trust, only those distributions of income, principal, or both, actually made by the trustee may be considered by the agency as available assets when evaluating eligibil-

ity for assistance. *Hecker,* at 230. In *Hecker,* the trust instrument gave the trustee "sole discretion" to make payments from the trust income or principal for the special needs of the beneficiary, without any limitations on the trustee's absolute discretionary power. *Id.* In fact, the trustee had the power to make no distribution at all, and the beneficiary could not compel the trustee to make payments from the income or to invade the principal. *Id.* We concluded the plain language of the trust demonstrated the settlor's clear intent that the trust not be used for the beneficiary's primary support or maintenance, because the instrument unequivocally stated it was to be a supplemental fund to public assistance. *Id.* Therefore, we determined the trust was discretionary and unavailable as an asset for the purpose of qualifying for public assistance benefits. *Id.* at 231.

[¶ 12] However, the language of a trust may include elements of both a support trust and a discretionary trust. This hybrid trust covers the middle ground between classic support and discretionary trusts. *Bohac,* 424 N.W.2d at 146 n. 3. In *Bohac,* the trust authorized invasion of principal as "Trustee may deem necessary" for the beneficiary's "support, maintenance, medical expenses, care, comfort and general welfare." *Id.* at 145–46. We found such trust language indicates an amount of discretion on the trustee's part, but did not go as far as the typical provision in a discretionary trust, giving the trustee uncontrolled discretion over payments to the beneficiary. *Id.* at 146. We also reasoned the trust's authorization of invasion of the corpus for the beneficiary's "comfort and general welfare" may take the trust language outside of a general support trust. *Id.* Because of these discrepancies on the face of the trust, we determined the trust language was ambiguous, and thus, we considered extrinsic evidence to ascertain whether the settlor intended a support trust or a discretionary trust. *Id.* We affirmed the agency's conclusions that the settlor intended the trust

to be a general support trust, and the trustee could be compelled to make payments from the principal for support, if required, because (1) the settlor's paramount intent was to provide for the beneficiary's future care, including medical care; and (2) the settlor did not intend the trust corpus to be preserved for subsidiary beneficiaries at the expense of the general care of the trust beneficiary, nor intend the trust to be supplementary to other sources of care, such as public assistance programs. *Id.* at 146–47. Therefore, we affirmed the agency's decision that the trust principal was an available asset, justifying denial of medical assistance benefits, but we did not determine whether the income of the trust was an available asset. *Id.* at 145 n. 2, 147.

[¶ 13] Similarly, in *Kryzsko v. Ramsey County Soc. Servs.,* 2000 ND 43, ¶ 16, 607 N.W.2d 237, the trust instrument contained elements of both a discretionary and a support trust. The trustee was given sole discretion to invade the trust principal to provide for the "proper care, maintenance, support, and education" of the beneficiary, yet we agreed the trustee did not have unfettered absolute discretion because the trustee must follow a standard of providing "proper" support and must annually distribute the trust income. *Id.* at ¶¶ 16–17. Unlike a discretionary trust, which fixes no standard on the trustee's absolute discretion whether to pay income or principal to the beneficiary and accumulates the unpaid trust assets for other beneficiaries, a support trust gives the trustee discretion only on the time, manner, or size of the payments needed to achieve a certain purpose such as support of the beneficiary. *Id.* at ¶ 17. We also noted the absence of any trust language plainly indicating the settlor's intent to create a supplemental source of support; rather, the trust was to provide primary support for the beneficiary. *Id.* at ¶ 21.

[¶ 14] Here, the intent of Hillestad's late husband may be discerned from the

unambiguous language of the trust creating a support trust regarding the trust income, but creating a hybrid trust regarding the trust principal. The trust language states, "The Trustee shall pay the entire net income of this trust to [Hillestad], so long as she shall live." Thus, Hillestad could compel distributions of income for expenses necessary for her support, and an agency may consider the trust income as an available asset when evaluating eligibility for Medicaid benefits. *See Hecker*, 527 N.W.2d at 229 (holding a support trust allows beneficiaries to compel distributions for support expenses). However, the trust language contains elements of both a discretionary trust and a support trust regarding the principal. This hybrid trust may be discerned by the unambiguous language limiting the trustee's discretion to invade the principal for purposes of Hillestad's support and by the settlor's preservation of the remaining principal and undistributed income for his children and their heirs. Although the trust accumulates unpaid trust assets for other beneficiaries, similar to a discretionary trust, the trust principal is not a classic discretionary trust, because there are standards governing the trustee's invasion of the principal. *See Kryzsko*, 2000 ND 43, ¶ 17, 607 N.W.2d 237 (explaining a discretionary trust has no standards limiting the trustee's absolute discretion). And although the settlor's intent was to provide "suitable support, care, necessities, and medical attention" to Hillestad, the trust principal is not a classic support trust either, because the trustee unequivocally could not invade the principal unless Hillestad complied with the terms and conditions provided by the trust. *See id.* at ¶¶ 16–17 (explaining a support trust gives the trustee discretion only on the time, manner, or size of support payments, but the beneficiary may compel distribution); *see also Bohac*, 424 N.W.2d at 146 (finding a support trust because the settlor's intent was to provide for the beneficiary's future care, and the settlor did not intend the trust corpus to be preserved for subsidiary beneficiaries

at the expense of the support of the primary beneficiary).

[¶ 15] Therefore, we hold the settlor intended the trust income as a support trust, which was an available asset for the purpose of qualifying for Medicaid benefits. However, the settlor intended the principal as a hybrid trust, with elements of both a support and a discretionary trust, which was only an available asset if Hillestad fulfilled the conditions limiting the trustee's power to invade the principal for her support.

## B

[¶ 16] The Department insists the only limitation on the trustee's discretion to invade the principal for Hillestad's needs was to determine whether Hillestad made substantial gifts of her property during her lifetime. We disagree.

[¶ 17] The will executed by Hillestad's late husband expressly imposed two conditions limiting the authority of the trustee to invade the trust principal for Hillestad's support. First, the language of the will plainly states: "It is my express direction that the principal of this trust not be invaded ... until [Hillestad] shall have exhausted all property held by her." Second, the will also unambiguously states: "[I]n the event [Hillestad] shall have made substantial gifts of her property to her children during her lifetime then I direct that no part of the principal of this trust be invaded for her benefit."

[¶ 18] The first condition of the trust, which determines whether the trust principal may be invaded and, therefore, is available for the Department's consideration in qualifying Hillestad for Medicaid benefits, depended on Hillestad's exhaustion of all her property. The Department incorporated by reference the parties' stipulation of facts as findings. The stipulated facts do not specifically address whether Hillestad exhausted her assets, but indicate Hillestad had a nursing home insurance policy which paid for her care for five years.

Hillestad did petition the district court for an order waiving filing fees because she was indigent. Therefore, we will assume for purposes of this appeal that Hillestad "exhausted all property held by her," the first condition precedent to invading the trust principal as an available asset before qualifying for Medicaid benefits, since the denial of her eligibility was based on the value of the trust. *See Kryzsko,* 2000 ND 43, ¶ 5, 607 N.W.2d 237 (reviewing an agency's decision to determine whether the agency's findings of fact are supported by a preponderance of the evidence and whether its conclusions of law are supported by findings of fact).

[¶ 19] The second condition of the trust limiting invasion of the principal depended on whether Hillestad "made substantial gifts of her property to her children during her lifetime." The Department's findings defined the term "substantial" as "significantly great" or "considerable in quantity" and implying a comparison of the value of Hillestad's gifts with the value of her income and assets, at the time she made the gifts, and the present and reasonably anticipated future costs of her support. After making this comparison, on a year-by-year basis from 1993–1997, the Department found Hillestad's gifts were not substantial, considering her advanced age and insurance coverage during those years which militated against a need to conserve assets for her future support. However, we conclude the Department erred in defining "substantial" from the perspective of Hillestad's intent and circumstances at the time of making the gifts, rather than from the perspective of her late husband's intent in conditioning the trust. *See In re Estate of Neshem,* 1998 ND 57, ¶ 7, 574 N.W.2d 883 (concluding if the language of a will is clear and unambiguous, the intent of the testator must be determined from language of the will itself, not from extrinsic evidence); *Hecker,* 527 N.W.2d at 229–30 (holding that ascertaining, upholding, and implementing the settlor's intent is our primary purpose when construing a trust instrument).

[¶ 20] When a term in an instrument is undefined, we usually look to the clear ordinary meaning which a non-law-trained person would attach to the term. *Martin v. Allianz Life Ins. Co. of N. Am.,* 1998 ND 8, ¶ 12, 573 N.W.2d 823. The term "substantial" is ordinarily defined as "of considerable worth or value; important." *Webster's New World Dictionary* 1420 (2d coll. ed.1980). The legal definition of "substantial" bears the same meaning: "[o]f real worth and importance; of considerable value; valuable." *Black's Law Dictionary* 1428 (6th ed.1990). As the ordinary meaning and legal meaning of "substantial" are in agreement, we conclude the term is not ambiguous. *See Martin,* at ¶ 13 (holding the definition of a term unambiguous when both the plain meaning and the complex or legal meaning are in agreement).

[¶ 21] Furthermore, the unambiguous language of the will requires analyzing Hillestad's gifts to her children "during her lifetime," not piecemeal annual comparisons. Rather, the Department must construe the will according to the intent of the settlor, Hillestad's late husband, by comparing Hillestad's assets during the entire period of years from the creation of the trust until she exhausted her assets, which triggered the trustee's discretion to invade the principal if she had not made substantial gifts to her children during that time. The Department's findings indicated Hillestad's late husband created the residuary trust for the benefit of Hillestad, which was to take effect following his death in 1992. Hillestad applied for Medicaid benefits in 1998, after her five-year insurance coverage expired. We assume that she exhausted her assets at this time, and this condition was not an impediment.

[¶ 22] We hold that a reasoning mind, considering the testator's intent, must find Hillestad's gifts to her children from 1993–1996, totaling $44,000 and representing 61% of her $72,331 income and assets for that time period, are important and valu-

able. Therefore, as a matter of law, Hillestad's gifts to her children were substantial. *See Kryzsko,* 2000 ND 43, ¶ 5, 607 N.W.2d 237 (affirming an agency's decision only if the agency's conclusions of law are supported by its findings of fact).

[¶ 23] In construing a will, a court must harmonize all parts of the will, if possible, so each word and phrase is given effect, because every word and phrase is presumed to have meaning. *Neshem,* 1998 ND 57, ¶ 7, 574 N.W.2d 883. If two interpretations of the language of a will are possible, one disregarding a word or phrase and one giving effect to the language of the will as a whole, the construction giving effect to the will as a whole must be adopted. *Id.*

[¶ 24] Our construction of the unambiguous language of the will creating the trust, which holds Hillestad's gifts to her children were substantial, comports with the intent of the settlor as expressed in the whole will. In article IV(2) of the will, Hillestad's late husband expressly prefaced his second condition to invading the trust with the following words: "I have purposely avoided making gifts of my property to my children during my lifetime to assure that the income of this trust shall be as large as possible. Therefore, in the event [Hillestad] shall have made substantial gifts . . . to her children . . . no part of the principal . . . be invaded. . . ." In article IV(3), (4), the will devises the remaining principal and undistributed income from the trust to be distributed to the settlor's own children and their heirs, not to Hillestad's children.

[¶ 25] When giving effect to each word and phrase in the language of the whole will, the settlor's intent unambiguously was to provide for Hillestad's "suitable support, care, necessities, and medical attention" from the income of the trust. The settlor expressly limited the trustee's authority to invade the principal by two conditions: exhaustion of Hillestad's assets and not gifting her children substantially. In that same paragraph, the settlor explained his purposeful creation of the trust for Hillestad, rather than his own children, if she complied with his directive not to gift to her own children. Because of the settlor's clear directive that no part of the principal could be invaded if Hillestad made substantial gifts to her children, followed by a devise to his own children of the remaining principal and unpaid income, we conclude the intent of Hillestad's late husband was to forbid her to invade the trust principal if she failed to fulfill the conditions, thereby preserving the principal for the settlor's own children to inherit on Hillestad's death. *See Hecker,* 527 N.W.2d at 230 (holding the plain language in the trust instrument demonstrates the settlor's clear intent that the trust not be used for the beneficiary's primary support, but only as a supplemental fund to public assistance).

## IV

[¶ 26] Therefore, we hold that Hillestad's late husband unambiguously created a support trust for Hillestad from the trust income, but the principal was a hybrid trust which could not be invaded because Hillestad made substantial gifts to her children during her lifetime. The Department's finding that Hillestad's gifts to her children were not substantial relative to the property she owned at the time she made the gifts is contradicted by the plain language of the trust instrument which indicated the settlor's intent was to protect the trust principal for his own children unless Hillestad complied with his conditions. Based on the intent of Hillestad's late husband, the Department's definition of the term "substantial" is rejected, as a matter of law. The Department's decision that the trust principal could be invaded and was available for the purpose of Medicaid eligibility is not supported by a preponderance of the evidence. We reverse and remand for further proceedings consistent with this opinion.

[¶ 27] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., DAVID W. NELSON, D.J., concur.

[¶ 28] DAVID W. NELSON, D.J., sitting in place of SANDSTROM, J., disqualified.