2002 ND 45

**Margaret OPP, Appellant,**

v.

**WARD COUNTY SOCIAL SERVICES BOARD and the North Dakota Department of Human Services, Appellees.**

**No. 20010199.**

Supreme Court of North Dakota.

March 12, 2002.

Richard R. LeMay, Legal Assistance of N.D., Minot, for appellant.

Jean R. Mullen, Assistant Attorney General, Bismarck, for appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Margaret Opp appealed from a judgment affirming a Department of Human Services' decision to terminate her Medicaid benefits because her available assets exceeded the maximum allowed. We conclude the preponderance of the evidence supports the Department's finding that Opp had "actually available" assets exceeding the $3,000 limitation when the Department terminated her benefits. We therefore affirm.

I

[¶ 2] Opp lives in Minot, is disabled, and received Medicaid benefits through the Department for medical expenses associated with her disability. Opp does not live in a nursing home and had been receiving Medicaid benefits since 1991. Opp's brother, Raymond Vetter, executed a will in 1997 bequeathing $500 to the Anamoose Cemetery Association and leaving "the RESIDUE of my Estate, consisting of all real and personal, or mixed property, of every kind and description, and wheresoever situate, to my sisters, MARGARET OPP ... and ROSE MARY HILDENBRAND ... IN EQUAL SHARES." The will also provided, "[i]n the event of the death of either of my sisters ... prior to the time of my death, or before there has been a distribution of property in my Estate, then the share of the deceased shall lapse, and I give, devise and bequeath the share that the deceased would have received, if living, to the sister who survives me, thereby that sister shall have 100% of my Estate." Opp and Hildenbrand were nominated personal representatives of Vetter's estate. The will was executed by Vetter as a single person without children. Vetter later married but did not make a codicil to the will to provide for his spouse.

[¶ 3] Vetter died on April 10, 2000. Vetter's will was admitted to probate and letters testamentary were issued appointing Opp and Hildenbrand personal representatives of the estate on April 18, 2000. The first publication of notice to creditors occurred on May 3, 2000.

[¶ 4] On May 19, 2000, the Ward County Social Services Board mailed to Opp a Medicaid closing notice informing her benefits would be discontinued effective May 31, 2000, because her assets exceeded the maximum of $3,000 allowed for her household. The notice listed Opp's countable assets as $58,005.66, and her eligibility worker explained:

I have used an estimate for the inheritance of $22,500 base values of the CD's

[sic] and estimate of $245/a for the 160a of land (half of the estate) less funeral costs of $4000. At this time I have had no response to my letter to the state regarding your question on disregarding the inheritance until distribution.

[¶ 5] Opp requested a hearing, which was held before an Administrative Law Judge ("ALJ") on August 15, 2000. The ALJ recommended reversing the Department's termination of benefits. The ALJ noted that at the time of the hearing, the inventory of estate assets had not been completed, the assets had not been appraised, and Vetter's surviving spouse, who had "received substantial property" outside of the will, had "not responded to any notice or otherwise made any appearance in the probate proceedings, but neither has she executed any waiver of her right to the elective share of the augmented estate or her right to claim an intestate share of his estate." The ALJ also noted that, although estate creditors had until August 3, 2000, to present their claims, as of the date of the hearing, the claims of health care providers whose services were payable in part by insurance had not been finally determined so the estate could approve and pay them. The ALJ found that at the time of the eligibility notice and continuing to the date of the hearing, Vetter's estate assets were not at Opp's disposal, Opp's contingent interest in the estate was not a liquidated sum, and Opp did not have the legal ability to make the sum available to her. The ALJ concluded Opp had shown none of Vetter's estate assets was actually available to her within the meaning of N.D. Admin. Code § 75–02–02.1–25(2).

[¶ 6] In a November 2000 order, the Department rejected the ALJ's recommendation because the ALJ "failed to consider that Opp presented no evidence that she made any attempt to secure a partial distribution from her brother's estate" and "reached the unsupported conclusion that such a partial distribution is unavailable as a matter of law." The Department found that, based on the estimate of the estate's attorney, "the value of estate assets exceeded claims of creditors by at least $80,000," and ruled "Opp has not demonstrated that she lacks the lawful power, as devisee, to make, or cause to be made, any part of the assets of" Vetter's estate "actually available" to her within the meaning of N.D. Admin. Code § 75–02–02.1–25(2). The district court affirmed the Department's decision. On appeal Opp argues the Department erred in terminating her Medicaid benefits.

## II

[¶ 7] When an administrative agency decision is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency, rather than the decision and findings of the district court. *Eckes v. Richland County Soc. Servs.*, 2001 ND 16, ¶ 6, 621 N.W.2d 851. Our review of an agency decision is governed by N.D.C.C. § 28–32–46, which requires us to affirm unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 8] When reviewing the agency's findings of fact, we determine whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence based on the entire record. *Kryzsko v. Ramsey County Soc. Servs.*, 2000 ND 43, ¶ 5, 607 N.W.2d 237. The agency's decisions on questions of law are fully reviewable by this Court. *Wahl v. Morton County Soc. Servs.*, 1998 ND 48, ¶ 4, 574 N.W.2d 859.

A

[¶ 9] North Dakota participates in and has designated the Department to implement the Medicaid program, which is a cooperative federal-state program designed to provide medical care to needy persons. *See Schmidt v. Ward County Soc. Servs. Bd.*, 2001 ND 169, ¶ 6, 634 N.W.2d 506; 42 U.S.C. § 1396 *et seq.*; N.D.C.C. § 50-24.1-01.1. Under the authority conferred by N.D.C.C. § 50-24.1-04, the Department has adopted rules for determining Medicaid eligibility. *See* N.D. Admin. Code ch. 75-02-02.1. Welfare regulations reflect a basic social policy that welfare recipients must use their own available income and resources before shifting the burden for their support to the public. *Schmidt*, at ¶ 15.

[¶ 10] An applicant for Medicaid benefits must prove eligibility. *Kryzsko*, 607 N.W.2d 237, 2000 ND 43, ¶ 7. When considering eligibility for Medicaid, the Department considers whether the applicant has sufficient assets to meet the costs of necessary medical care and services. *Eckes*, 621 N.W.2d 851, 2001 ND 16, ¶ 7; N.D.C.C. § 50-24.1-02. A "one-person unit" is eligible for Medicaid benefits if the total value of that person's assets does not exceed $3,000. *Eckes*, at ¶ 7; N.D. Admin. Code § 75-02-02.1-26(1). The Department has defined an "asset" as "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." N.D. Admin. Code § 75-02-02.1-01(3). Under both federal and state law, an asset must be "actually available" to an applicant to be considered a countable asset for determining Medicaid eligibility. *Post v. Cass County Soc. Servs.*, 556 N.W.2d 661, 664 (N.D.1996). The Department's administrative rules provide:

Only such assets as are actually available will be considered. Assets are actually available when at the disposal of an applicant, recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available. Assets will be reasonably evaluated. A determination that an asset is deemed available is a determination that the asset is actually available. . . .

N.D. Admin. Code § 75-02-02.1-25(2).

[¶ 11] Determining whether an asset is "actually available" for purposes of Medicaid eligibility is largely a fact-specific inquiry depending on the circumstances of each case. *Post*, 556 N.W.2d at 664. In-

terpretation of the "actually available" requirement must be reasonable, and the focus is on the applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction. *Id.* However, an asset to which an applicant has a legal entitlement is not unavailable simply because the applicant must initiate legal proceedings to access the asset. *Id.* at 665; *Schmidt*, 634 N.W.2d 506, 2001 ND 169, ¶ 14.

## B

[¶ 12] Determining whether Opp's inheritance was "actually available" to her when the Department terminated her Medicaid benefits requires some background on North Dakota probate law.

[¶ 13] Upon a person's death, "the decedent's real and personal property devolves to the persons to whom it is devised by the decedent's last will . . . subject to homestead allowance, exempt property, and family allowance, to rights of creditors, elective share of the surviving spouse, and to administration." N.D.C.C. § 30.1–12–01. *See also Feickert v. Frounfelter*, 468 N.W.2d 131, 132 (N.D.1991) (noting "[p]roperty passes upon death, not upon distribution"). The administration of an estate commences upon the issuance of letters to the decedent's personal representative. N.D.C.C. § 30.1–12–03. Informal probate of a will and issuance of letters cannot begin until five days after death. N.D.C.C. §§ 30.1–14–02 and 30.1–14–07.

[¶ 14] Creditors whose identities are not reasonably ascertainable are allowed three months after the first publication of the notice to creditors to make a claim against the estate. N.D.C.C. § 30.1–19–01. Known or reasonably ascertainable creditors are allowed three months after first publication or the mailing of a notice to make a claim against the estate. *Id.*

Because Vetter made no provision for his spouse in the will, his spouse, if she chooses, may take an elective share of one-half of the augmented estate under the procedures set forth in N.D.C.C. ch. 30.1–05. *See* N.D.C.C. § 30.1–05–01(1); *Matter of Estate of Zimmerman*, 2001 ND 155, ¶ 10, 633 N.W.2d 594. Under N.D.C.C. § 30.1–05–05(1), a surviving spouse's petition for the elective share must be made by filing it with the court and mailing or delivering it to the personal representative within nine months after the decedent's death, or within six months after the probate of the decedent's will, whichever limitation later expires.

[¶ 15] A personal representative has a fiduciary duty to act reasonably for the benefit of the heirs, creditors, and other parties interested in the estate. *Matter of Estate of Thomas*, 532 N.W.2d 676, 686 (N.D.1995); *Matter of Estate of Rolczynski*, 349 N.W.2d 394, 397 (N.D. 1984). Under N.D.C.C. § 30.1–18–17, "[i]f two or more persons are appointed corepresentatives and unless the will provides otherwise, the concurrence of all is required on all acts connected with the administration and distribution of the estate." A personal representative or "any interested person" may petition for partial distribution of an estate. N.D.C.C. § 30.1–16–05; *Matter of Estate of O'Connell*, 476 N.W.2d 8, 10 (N.D.1991); *Conway v. Parker*, 250 N.W.2d 266, 276–77 (N.D.1977). Before an estate is closed, a personal representative or heir may also seek from the court partition of undivided interests in real or personal property. N.D.C.C. § 30.1–20–11. However, no petition for an order for complete settlement of an estate may be entertained until the time for presenting claims which arose prior to the death of the decedent has expired. N.D.C.C. § 30.1–21–01(1). If assets are distributed before all of the claims

of creditors are paid or are barred, creditors may recover from the distributees under N.D.C.C. § 30.1–21–04, or from the personal representative under N.D.C.C. § 30.1–21–05.

### C

[¶ 16] This Court has not previously addressed when an inheritance is "actually available" for purposes of determining Medicaid eligibility. Courts in New York have addressed the question.

[¶ 17] In *Matter of Estate of Little*, 174 Misc.2d 153, 663 N.Y.S.2d 788 (N.Y.Sur.Ct. 1997), Mary E. Little received Medicaid assistance during her stay in a nursing home during 1994 and 1995. On November 7, 1994, Little's aunt died, leaving a one-third general residuary legacy to Little. The estate was valued between $250,000 and $300,000. Little signed a waiver and consent for probate form on December 1, 1994. On December 12, 1994, Little recertified for Medicaid, noting on the application she expected an inheritance, although the precise amount was not designated. In May or June 1995, Little received a partial distribution of $90,000 from the estate, and received a total distribution of $114,726 before her death on June 27, 1995. The Social Services Department filed a claim against Little's estate seeking $23,233.03 for the cost of Little's care between November 7, 1994, when Little's aunt died, and June 27, 1995, when Little died. Little's estate contended that, because Little received her first distribution from her aunt's estate in June 1995, the date of receipt of the inheritance should be the earliest time she should be charged with having an "available resource," and the Department's claim should be denied in full. Because Little's inheritance was neither " 'easily liquidated' " nor " 'within her control' " under New York law, Little's estate argued the

inheritance could not be considered an available resource until the time it was distributed to her. *Id.* at 789. The Surrogate Court of Cattaraugus County described the issue between the parties as "when the bequest to Mrs. Little becomes an 'available resource' and thus permits the Department to recover funds expended for her care." *Id.* at 788.

[¶ 18] The court concluded, under New York law, "a non-renounced bequest must be deemed to be effective as of the date of the testator's death," and found the Department entitled to reimbursement for the cost of Little's care commencing from the date of the aunt's death. *Matter of Estate of Little*, 663 N.Y.S.2d at 790. The court reasoned, if an inheritance became an available resource only upon distribution, "distributions could, and undoubtedly would, be deliberately delayed in order to preserve a beneficiary's Medicaid eligibility as long as possible." *Id.* at 790.

[¶ 19] The Surrogate Court's decision was reversed on appeal by the Fourth Department of the Supreme Court, Appellate Division. In *In re Little*, 256 A.D.2d 1152, 684 N.Y.S.2d 124, 125 (N.Y.App.Div. 1998), the court ruled "the critical issue is the date when the inheritance was in the control of decedent," and relied in part on the New York State Department of Social Services Medical Assistance Eligibility Desk Reference Guide which referred to inheritances as "windfalls" to be considered income in the month of their receipt. The court reasoned:

The Surrogate concluded that this case is analogous to those cases in which MA recipients renounce bequests. When a legatee renounces an inheritance, however, she renounces her right to inherit, and the renunciation causes the Surrogate to treat the legatee as if she predeceased the testator and therefore never had the right to inherit in the

first place. The renouncing legatee is in violation of the requirement that she "pursue any potential income and resources that may be available" (18 NYCRR 360–2.3[c]). That is not the situation here. We recognize the potential for collusion between the executor of the estate and the legatee. It is not disputed, however, that petitioner acted in an exemplary manner, and there is no allegation of bad faith or fraud.

*Id.* A motion for leave to appeal was denied by the New York Court of Appeals. *In re Little*, 93 N.Y.2d 807, 691 N.Y.S.2d 2, 712 N.E.2d 1245 (1999). New York courts have since cited *In re Little* for the proposition that a person's inherited funds are not available resources for Medicaid purposes until the person has dominion or control over them. *See, e.g., In re Blakey*, 187 Misc.2d 312, 722 N.Y.S.2d 333, 335 (N.Y.Sup.Ct.2000).

[¶ 20] This Court has rejected the notion, apparently endorsed by the New York courts, that an asset must be "in hand" to constitute an "actually available" resource. *Post*, 556 N.W.2d 661, 664; *Schmidt*, 2001 ND 169, ¶ 13, 634 N.W.2d 506. In *Post*, 556 N.W.2d at 665–66, this Court upheld an administrative determination that past-due property settlement payments and insurance premiums owed by an ex-spouse under a divorce decree were "actually available" to a disabled Medicaid applicant who was legally entitled to the amounts under the decree and who had successfully sued to enforce the decree in the past. This Court reasoned the applicant had an "actual and practical ability" to make the sums due under the divorce decree available because the applicant had not shown she "would have been unsuccessful in exercising her legal right to enforce the payments mandated by the divorce decree." *Id.* at 664–65.

[¶ 21] In *Schmidt*, Schmidt and a minor's mother were divorced. When the minor's mother died, the minor received $25,000 from his mother's life insurance policy and he began living with Schmidt. Schmidt established a conservatorship for the insurance proceeds and the court named Schmidt the conservator. The letters of conservatorship stated that, "unless otherwise ordered by the appointing court, the conservator shall disburse the conservatorship funds to [the minor] at age 23, or sooner" if needed for educational purposes. *Schmidt*, 634 N.W.2d 506, 2001 ND 169, ¶ 2. The minor had been receiving Medicaid benefits as a dependent child who was deprived because of his mother's death, and Schmidt was included in the Medicaid unit. The household's Medicaid benefits were terminated because the household's assets, including the conservatorship funds, exceeded the eligibility limits. We rejected Schmidt's argument that the conservatorship funds were not available assets because legal impediments precluded access to the funds except for the minor's college education:

> Here, at Schmidt's request, the appointing court established the conservatorship with [the minor's] insurance proceeds, and "unless otherwise ordered by the Court," authorized Schmidt, the conservator, to disburse the funds to [the minor] at age 23, or sooner for his college education. Under N.D.C.C. § 30.1–29–16, a conservator may petition the appointing court for instructions regarding the conservator's fiduciary responsibilities, and any person may petition the court for an order regarding distribution of the estate. The appointing court specifically reserved the power to amend the conservatorship, and the court has not decided [the minor's] needs and the necessity to expend funds from the conservatorship for his support.... [T]he appointing court must make that deter-

mination without regard to the availability of public assistance benefits. Schmidt did not present evidence to show the appointing court will not exercise its authority to expend funds from the conservatorship for [the minor's] medical needs. Under these circumstances, a reasonable person could reasonably conclude [the minor's] conservatorship funds are available to him, and the Department's decision that the funds are available is supported by a preponderance of the evidence.

*Id.* at ¶ 16.

[¶ 22] Opp had the burden of establishing her inheritance was not "actually available" to her when the Department terminated benefits. *Post*, 556 N.W.2d at 665. Opp does not challenge the Department's finding that the value of the Vetter estate assets exceeded creditors' claims by at least $80,000, resulting in Opp's share of the estate probably being $40,000 upon final distribution. Opp had the power to request her corepresentative to concur in distributing some of the estate assets to herself. If she did not succeed in gaining the corepresentative's concurrence, Opp had the further power as a residuary devisee, an "interested person" under N.D.C.C. § 30.1–16–05, to petition the probate court for a partial distribution of the estate. Although Opp argues she will not inherit anything under the terms of Vetter's will unless she survives a "distribution," the will provision does not limit the distribution to a "final distribution," and partial distributions are specifically authorized by law.

[¶ 23] At the time the Department terminated Opp's benefits, more than two months remained for creditors to file claims against Vetter's estate and a claim for an elective share of the augmented estate by Vetter's spouse was a possibility. Because of these contingencies, it is possible the court would have denied Opp's request for a partial distribution of the estate if a request had been made, in which case Opp would have clearly shown the assets were not available. However, speculating whether Opp would ultimately succeed in obtaining a partial distribution from the estate is not the primary inquiry under our decisions in *Post* and *Schmidt*. Rather, *Post* and *Schmidt* require a Medicaid recipient to attempt to access the asset through reasonable legal means. Opp made no effort to partially access her inheritance through the reasonable legal means available to her under probate law. Consequently, Opp has not shown her corepresentative or the probate court will refuse to grant her access to any estate assets. Under these circumstances, a reasonable person could reasonably conclude Opp's inheritance is available to her, and we conclude the Department's decision that Opp had failed to prove the assets were not "actually available" to her is supported by a preponderance of the evidence.

**D**

[¶ 24] Opp argues the Department's eligibility decision can be no more restrictive than under the 1972 state plan because of North Dakota's § 209(b) status, *see Wahl*, 1998 ND 48, ¶¶ 20–26, 574 N.W.2d 859, and she is entitled to benefits under the 1972 plan. However, Opp presented no evidence at the administrative hearing to show she satisfied the eligibility standards under the 1972 state plan. *See Schmidt*, 634 N.W.2d 506, 2001 ND 169, ¶ 16 n. 2. Absent support in the record, Opp's argument is without merit.

[¶ 25] Opp further argues, because she does not reside in a nursing home and is entitled to claim a home and one motor vehicle as exempt assets for purposes of determining Medicaid eligibility under N.D. Admin. Code § 75–02–

02.1–27, she could convert her inheritance into an exempt asset and still remain eligible for Medicaid. Opp has not attempted to convert her inheritance into an exempt asset, and she did not testify at the administrative hearing that she planned to do so. Addressing this issue would be tantamount to rendering advice on a purely academic or abstract question. *See Bies v. Obregon,* 1997 ND 18, ¶ 10, 558 N.W.2d 855. We do not render advisory opinions. *Id.* at ¶ 9.

### III

[¶ 26] The judgment is affirmed.

[¶ 27] SANDSTROM, NEUMANN, and MARING, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 28] I respectfully dissent. The majority opinion, as part of Opp's burden, would require duplication of party and judicial resources at the beginning of probate proceedings when those proceedings were already undertaken expeditiously and at a time when her interest was not and could not be a liquidated sum. This requirement not only wastes judicial resources, it exposes Opp to liability as a personal representative of the estate.

[¶ 29] While I agree Opp has the burden of establishing her inheritance was not "actually available" to her, I part ways with the majority's determination Opp has not met this burden. The majority holds as part of her burden to establish unavailability, Opp must request a partial distribution of the estate under N.D.C.C. § 30.1–16–05.

[¶ 30] Substantial legal impediments, under both the probate code and the terms of Vetter's will, prevented Opp from accessing any estate assets before May 31, 2000, and therefore preclude a determination the funds were available. When the Department terminated her benefits, Opp's interest was not in a settled or determined sum from Vetter's estate. Indeed, whether Opp received any assets under Vetter's will depended upon various contingencies. Vetter's will required Opp survive a distribution in order to take anything under the will. The Department's finding Vetter's net estate totaled $80,000 was based on evidence at the time of the administrative hearing after the period for filing creditor's claims had passed, and amounts owed Vetter's health care providers were still uncertain. The argument Opp, as a potential residuary beneficiary, had the ability to make her inheritance either partially or totally available when the Department terminated benefits is not based upon fact, but merely upon "legal fiction." *Post v. Cass County Soc. Servs.,* 556 N.W.2d 661, 664 (N.D.1996).

[¶ 31] This case differs substantially from the cases relied on by the majority. In *Post,* a judgment already existed which established Post's right to support payment from her former spouse. *Id.* at 663. The right to receive the payment was certain and the amount of arrearages was fixed. *Id.* She was required to sue in order to establish that this fixed, already due, amount was not available. *Id.* at 665.

[¶ 32] In *Schmidt v. Ward County Soc. Servs. Bd.,* 2001 ND 169, ¶ 2, 634 N.W.2d 506, a conservatorship had been established and the child was the sole beneficiary. The fund existed, contained an amount certain, and no other person had a claim to it. *Id.* The fund would have been disbursed for the child after graduating from high school "unless otherwise ordered by the appointing court." *Id.* No one had attempted to determine if distribution could be made for the child's current support needs. *Id.* at ¶ 16.

[¶ 33] By contrast, Opp has initiated, in a most expeditious manner, the process necessary to actualize her interest. She

has met her burden by showing that on May 31, 2000 the following were the facts. She had initiated probate within a few days of her brother's death. She was the personal representative. She had published notice to creditors. There were other claimants to the assets of the estate, including medical creditors, and potentially the claim of the surviving spouse. The amount of the known claims could be approximated but was not fixed. The time for filing creditors' claims had not elapsed. Therefore, other creditors could have emerged. Her interest in the estate was contingent upon survival until distribution.

[¶ 34] In addition to wasting judicial resources, seeking a partial distribution would expose Opp to liability. As the majority sets out in ¶ 15, Opp, as a personal representative, has a fiduciary duty to act reasonably for the benefit of heirs, creditors, and other interested parties. Under N.D.C.C. § 30.1–18–12, a personal representative is liable for damage or loss resulting from a breach of this fiduciary duty. *Matter of Estate of Peterson*, 1997 ND 48, ¶ 36, 561 N.W.2d 618. If, as the majority would require, Opp requests a partial distribution and if, after such a request, assets are distributed before all creditors' claims are paid or barred, Opp as personal representative would have fiduciary liability to the creditors. N.D.C.C. § 30.1–21–05. As the majority recognizes in ¶ 23, "[a]t the time the Department terminated Opp's benefits, more than two months remained for creditors to file claims against Vetter's estate and a claim for an elective share of the augmented estate by Vetter's spouse was a possibility."

[¶ 35] The probate code establishes three months as a reasonable time for creditors to file their claims. N.D.C.C. § 30.1–19–01. Opp started that period by timely publishing a notice to creditors.

Under these facts it is patently unreasonable to require a potential heir to rush into court before the three months has elapsed with another proceeding to show that her interest was not actually available. On May 31, 2000 all of the interests in the estate could not even be identified.

[¶ 36] Because Opp set the probate process in motion in a timely manner, and because the request for a partial distribution would invite a waste of judicial resources and expose Opp to liability, I would reverse the judgment affirming the Department's decision and remand for reinstatement of Opp's Medicaid benefits.

[¶ 37] CAROL RONNING KAPSNER, J.