Lawrence **HINSCHBERGER**, by and through his conservator, Mary **OLSON**, Appellee,

v.

**GRIGGS COUNTY SOCIAL SERVICES, Griggs County Social Service Board, and North Dakota Department of Human Services, Appellants.**

**Civ. No. 920232.**

Supreme Court of North Dakota.

May 11, 1993.

Duane Houdek, Legal Assistance of North Dakota, Bismarck, for appellee.

Michele G. Johnson, Asst. Atty. Gen., Bismarck, for appellants.

SANDSTROM, Justice.

Griggs County Social Services, the Griggs County Social Service Board, and the North Dakota Department of Human Services appeal from a district court judgment reversing the Department's denial of Lawrence Hinschberger's application for medical assistance benefits. We reverse the district court and remand to the Department for proceedings consistent with this opinion.

Lawrence and Esther Hinschberger were married in 1973. The marriage was the second for both, and they each had adult children from their previous marriages. Lawrence has been a resident of the Griggs County Hospital and Nursing Home since July 1987. Lawrence's daughter, Mary Olson, was appointed as his conservator in 1988. Esther was also a resident at the same nursing home, and her daughter, Lois Curtis, was appointed as her conservator in 1986.

In 1987, Esther, through her conservator, sued Lawrence, his children, and his conservator, seeking a determination that she was not liable for Lawrence's debts or

support. The nursing home[1] sued Lawrence, Esther, their children, and their conservators for payment of Lawrence's nursing home bills. Esther died on April 3, 1989. In the summer of 1989, Esther's estate paid the nursing home $14,000 for a "mutual release" of the nursing home's claim against Esther's estate for services provided by the nursing home to Esther and Lawrence. As part of the same negotiations, Lawrence's conservator executed a "mutual release" which "release[d] and waive[d] any claim he may have against Esther or her estate to inherit or receive any portion of Esther's estate, including any statutory right to receive the same whether by intestate succession or spouses elective share or otherwise."

Meanwhile, on May 31, 1989, Lawrence, through his conservator, applied to the Griggs County Social Service Board for medical assistance benefits. On several occasions, the Board requested information from Lawrence's conservator, including an accounting of Esther's estate and a copy of the settlement between Esther's estate and the nursing home. On November 3, 1989, the Board denied the application for medical assistance benefits for "failure to provide information necessary to determine eligibility" including a "letter verifying Mrs. Hinschberger's assets and how they were disbursed [and a] copy of court order of your settlement with the Griggs County Nursing Home." The nursing home appealed to the Department of Human Services.

After an administrative hearing, a hearing officer recommended that the Department reverse the Board's denial and find Lawrence eligible for medical assistance benefits, effective from the date of application on May 31, 1989. The Department rejected the hearing officer's recommendation, because "[f]rom April 3, 1989 [the date of Esther's death] until the execution of the 'mutual release,' Larry Hinschberger's assets included any right or claim he might have against" Esther's estate and because the hearing officer did not make any determination regarding the value of

Lawrence's claim against Esther's estate or the adequacy of consideration for the release of Lawrence's claim against her estate.

The Department remanded to the Board, requesting Lawrence's conservator to provide an accurate description of the consideration paid on behalf of Lawrence for the mutual release; an accurate description of the value of Lawrence's rights under N.D.C.C. §§ 30.1–07–01 and 30.1–07–02; and the actual date of the execution of the mutual release by Lawrence's conservator. The Department's order provided:

> "If the requested information is not provided by April 30, 1991, the Griggs County Social Service Board is instructed to so inform this office and an Order will be entered affirming the November 3, 1989 denial of Lawrence Hinschberger's application for Medical Assistance benefits due to a failure to provide information or verification necessary to determine eligibility, and directing the Griggs County Social Service Board to determine Lawrence Hinschberger to be eligible for Medical Assistance benefits as of April 21, 1991.

> "If the requested information is furnished by the representatives of Lawrence Hinschberger, the Griggs County Social Service Board is directed to examine that information and, if the value of Lawrence Hinschberger's rights under N.D.C.C. §§ 30.1–07–01 and 30.1–07–02 are not approximately equal to the consideration paid to Lawrence Hinschberger for the execution of the 'mutual release,' that the Griggs County Social Service Board make a determination of a period of ineligibility pursuant to NDDHS Manual Section 510–05–30–62 and determine Lawrence Hinschberger to be eligible for a period consistent with that determination."

Lawrence's conservator then submitted some additional information. Thereafter, the Department affirmed the Board's November 3, 1989, denial of medical assistance benefits, finding:

---

1. Hospital Services, Inc., was later substituted as the plaintiff in that action.

"1. The representatives of Lawrence Hinschberger were requested to identify and provide an accurate description of the consideration paid to or on behalf of Lawrence Hinschberger for the execution of the mutual release, and have furnished information describing that consideration as $14,000.

"2. The representatives of Lawrence Hinschberger were requested to identify and provide an accurate description of the value of Lawrence Hinschberger's rights under N.D.C.C. §§ 30.1–07–01 and 30.1–07–02, but have failed to do so.

"3. The representatives of Lawrence Hinschberger were requested to identify and provide evidence concerning the actual date and execution of the 'mutual release' by Mary Olson, acting as conservator of Lawrence Hinschberger, but have failed to do so.

"4. The evidence of record reveals a transfer for less than adequate consideration.

"5. A transfer for less than adequate consideration precludes eligibility for nursing home care for a period of time, beginning upon the date of transfer and continuing for a number of months determined by dividing the uncompensated value of the transfer by the average monthly cost of care at the time of application. 42 U.S.C. § 1396p(c)(1).

"6. If Lawrence Hinschberger was entitled to the entire Esther Hinschberger estate, he would not be ineligible, due to a disqualifying transfer, after May 9, 1991, no matter what additional evidence is secured. That is so because the maximum value of the Esther Hinschberger estate was $51,467.21 and $14,000 was paid as part of the transaction in which the mutual release was executed. The 'uncompensated value' could not have exceeded $37,467.21, an amount sufficient to disqualify Lawrence Hinschberger for 22.3 months, including the month in which the transfer was made. If the transfer was made in July 1989, the period of ineligibility would end May 9, 1991.

"7. Lawrence Hinschberger's eligibility for Medicaid benefits, after May 9, 1991, may be determined without regard to the amount of the disqualifying transfer.

"8. The Revised Memorandum and Order for Remand of March 18, 1991 incorrectly identified the maximum value of the Esther Hinschberger estate as $50,467.21, rather than the correct amount of $51,467.21. That amount, and calculations derived from that amount, are corrected in this order." [Emphasis in original].

Lawrence appealed to the district court, which reversed and remanded for a determination of Lawrence's eligibility for medical assistance benefits using only the actual value of Lawrence's present assets and not the value of any potential assets from Esther's estate. The Department appealed the district court's decision.

When a decision of the Department is appealed to the district court and then to this court, we review the Department's decision and look at the record compiled before the Department. *Schultz v. North Dakota Dept. of Human Services*, 372 N.W.2d 888 (N.D.1985). Under N.D.C.C. § 28–32–19, we affirm the Department's decision if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law. *Schultz, supra.*

The Department asserts that Lawrence, through his conservator, failed to establish that he was eligible for medical assistance benefits. The Department argues that Lawrence's conservator's "mutual release" of Lawrence's elective right in Esther's estate was a disqualifying transfer under N.D.C.C. ch. 50–24.1, because it was made for less than adequate consideration. Lawrence responds that he was unable to obtain necessary information from Esther's representatives about her estate and that the Department erred in determining that he did not receive his fair share of Esther's estate. He argues that his conservator's

"mutual release" of his interest in Esther's estate was adequate consideration for any claim he may have had against the estate and was not a disqualifying transfer for purposes of determining his eligibility for medical assistance benefits.

■ Section 50–24.1–02(1), N.D.C.C., authorizes medical assistance benefits for persons with income and resources insufficient to meet the costs of necessary medical care who have

> "not at any time before or after making application for medical assistance made an assignment or transfer of property for the purpose of rendering himself eligible for assistance under this chapter. For the purposes of making any determination or redetermination of eligibility, the phrase 'assignment or transfer' includes, but is not limited to, actions or failures to act which effect a renunciation or disclaimer of any interest which the applicant or recipient might otherwise assert or have asserted, or which serve to reduce the amounts which an applicant or recipient might otherwise claim from a decedent's estate, a trust or similar device, or a person obligated by law to furnish support to the applicant or recipient."

Under that statute, renouncing a right to a decedent's estate is a transfer for purposes of determining eligibility for medical assistance benefits. *Compare Nielsen v. Cass County Social Services Board,* 395 N.W.2d 157 (N.D.1986) [decided before 1987 amendment to N.D.C.C. § 50–24.1–02(1), in which a majority of this court held that a beneficiary's renunciation of an interest in an inheritance did not disqualify her from receiving medical assistance benefits, because the effect of the renunciation was to treat the interest as if it had never passed to the renouncing party].[2]

■ In this case, different conservators were appointed for Esther and for Lawrence. The appointment of a conservator vests title to the protected person's property in the conservator. N.D.C.C. § 30.1–29–20. A conservator has authority to renounce the protected person's right of succession to any property interest. N.D.C.C. § 30.1–10–01(1). However, a conservator must act as a fiduciary in dealing with the protected person's property and must follow the standards observed by a prudent person dealing with the property of another. N.D.C.C. §§ 30.1–29–17 and 30.1–34–02. *See Matter of Conservatorship of Kinney,* 495 N.W.2d 69 (N.D.1993). The prudent person standard dictates that, before renouncing a protected person's interest in a decedent's estate, a conservator must reasonably ascertain the value of the estate and of the renounced property. That fiduciary responsibility parallels the requirement that, for purposes of determining medical assistance benefits, a transfer of property is treated as a disqualifying transfer to the extent that the transferor receives less than fair market value for the property. N.D.A.C. § 75–02–02–25(1).[3]

Lawrence presented evidence that, at the time of Esther's death, her estate consisted of an interest in two bank accounts. One account was a trust account for Esther's benefit, which listed two of her children as co-trustees. That account had a balance of $15,660.82 when it was closed on April 19, 1989. The other account identified Esther's three children as "co-trustees with right of survivorship" and listed a balance of $35,806.39 when it was closed on April 19, 1989.

■ The Department asserts that Lawrence did not provide adequate information to determine his eligibility for medical assistance benefits and suggests that there may have been other assets in Esther's estate. However, the record does not support the Department's suggestion that Esther's estate may have included other assets. Lawrence maintains that Esther's interest in the two bank accounts was her entire estate at the time of her death and submitted evidence to that effect. Instead

---

2. The 1987 Legislature amended N.D.C.C. § 50–24.1–02(1) to add the definition for "assignment or transfer." 1987 N.D.Sess.Laws, Ch. 579, § 1.

3. Effective December 1, 1991, N.D.A.C. § 75–02–02–25 was repealed. Section 75–02–02.1–33, N.D.A.C., describes the current provisions for disqualifying transfers.

of compelling the production of any records that could have resolved the Department's uncertainty,[4] the Department concluded that the evidence revealed a transfer for less than adequate consideration. The Department found that the "maximum value" of Esther's estate was $51,467.21, which equals the value of the two bank accounts, and that Lawrence, through his conservator, was paid $14,000 in consideration for the mutual release. The findings on the maximum value of Esther's estate and the consideration for the mutual release have not been challenged on appeal, and we believe that a reasoning mind could reasonably conclude that they are supported by a preponderance of the evidence in the record. N.D.C.C. § 28–32–19(5); *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D. 1979).

Given the Department's findings on the maximum value of Esther's estate and on the value of consideration given for the mutual release, the dispositive issue on appeal is whether Lawrence received adequate consideration for the release of his rights in Esther's estate.

In determining Lawrence's rights in Esther's estate, the parties rely upon the "elective share" provisions of N.D.C.C. ch. 30.1–05, which allow a surviving spouse to take an elective share of one-third of the decedent's augmented estate. N.D.C.C. § 30.1–05–01. As relevant to this case, the "augmented estate" means the decedent's estate reduced by funeral and administrative expenses, family allowances and ex-emptions, plus the value of property held by the decedent and another with the right of survivorship. N.D.C.C. § 30.1–05–02(1). A surviving spouse is entitled to $5,000 in exempt personal property in addition to any elective share. N.D.C.C. § 30.1–07–01. During the period of administration, the surviving spouse is also entitled to a reasonable family allowance in a lump sum not exceeding $6,000, or in periodic installments not exceeding $500 per month for one year. N.D.C.C. §§ 30.1–07–02 and 30.1–07–03.

■ In this case, Esther's estate incurred $3,500 in attorney's fees and $4,400 in funeral expenses. Lawrence was also entitled to $5,000 in exempt property under N.D.C.C. § 30.1–07–01. The Department determined that Lawrence was also entitled to Esther's entire estate as a family allowance, because N.D.C.C. § 30.1–07–03 allows any "interested person aggrieved by any selection, determination, payment, proposed payment, or failure to act under this section [to] petition the court for appropriate relief, which relief may provide a family allowance larger or smaller than that which the personal representative determined or could have determined." However, N.D.C.C. § 30.1–07–02 authorizes a family allowance only "during the period of administration." Here, the evidence shows that no probate of Esther's estate was instituted because there were no assets in her estate other than personal property and that no financial accounting of her estate

---

**4.** Although a party seeking medical assistance benefits has the burden of establishing eligibility [N.D.A.C. § 75–02–02–16(1)], the Department also has the authority in investigating applications for medical assistance benefits to compel the attendance of witnesses and the production of books, records, and papers. N.D.C.C. § 50–24.1–03.2. Section 30.1–29–18, N.D.C.C., requires a conservator to file a complete and accurate inventory of the estate of the protected person with the appointing court within ninety days of appointment and to keep suitable records of the administration and exhibit the same on request of any interested person. At the time of Esther's death, N.D.C.C. § 30.1–29–19 required a conservator, upon resignation or removal and at other times as directed by the court, to account for administration of the trust. Effective July 12, 1989, N.D.C.C. § 30.1–29–19 requires a conservator to account to the court not less than annually, unless the court directs otherwise.

After oral argument, counsel for Lawrence submitted a request to take judicial notice of the last, but not final, accounting filed in Esther's conservatorship. The deputy clerk of the Griggs County Court certified that the last annual accounting on record in Esther's conservatorship was held on August 25, 1988, for the period covering March 1, 1987, through February 29, 1988. That accounting summarized Esther's total assets as $75,578.49, and identified Esther's expenses for that year, including $26,295.91 for nursing home care. Esther died on April 3, 1989, and this record does not include an accounting or record of her estate at the time of her death.

was prepared because there was no probate and no assets of any financial consequence. An affidavit of counsel for Esther's conservator indicates that:

"The monies from these [two] accounts were used to pay the amount which had to be paid to Hospital Services, Inc., to settle the Hospital Services lawsuit, for services and goods that had been supplied to Esther Hinschberger and for legal fees and costs. Approximately $11,000 each was distributed to [Esther's three children]. These funds were not part of the Estate of Esther Hinschberger who died leaving no estate other than some personal property of no monetary value."

Under these circumstances, the statutes authorizing a family allowance do not support the Department's determination that Lawrence was entitled to Esther's entire estate as a family allowance, and, to that extent, the Department's decision is not in accordance with the law.

■ Under the elective share provisions, Lawrence was entitled to an elective share of $12,855 plus $5,000 for exempt property for a total of $17,855. Lawrence had that property actually available to him prior to the effective date of the mutual release. Lawrence's release of his interest in Esther's estate was $3,855 less than adequate consideration for his interest in her estate and was, to that extent, a disqualifying transfer. N.D.A.C. § 75–02–02–25(1). A transfer for less than adequate consideration precludes eligibility for nursing home care beginning from the date of transfer and continuing for the number of months determined by dividing the uncompensated value of the transfer by the average monthly cost of care at the time of the application. 42 U.S.C. § 1396p(c)(1) (1992). Thus, Lawrence must expend $3,855 after the effective date of the mutual release before he may be entitled to medical assistance benefits.

Accordingly, we reverse the district court judgment and remand to the Department for determination of Lawrence's eligibility for medical assistance benefits in accordance with this opinion.

VANDE WALLE, C.J., and LEVINE, NEUMANN and MESCHKE, JJ., concur.