Post v. Cass County Social Service Board, 556 N.W.2d 661 (N.D. 1996)|N.D. Supreme Court|
Post v. Cass County Social Service Board, 556 N.W.2d 661 (N.D. 1996)
[Go to Documents]
Filed Dec. 4, 1996
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
Lois Post, Applicant and Appellee
v.
Cass County Social Services, Cass County Social Service Board, and North Dakota Department of Human Services, Respondents and Appellants
Civil No. 960164
Appeal from the District Court for Cass County, East Central Judicial District, the Honorable Michael O. McGuire, Judge.
REVERSED.
Opinion of the Court by Meschke, Justice. Duane Houdek (argued), Legal Assistance of North Dakota, P.O. Box 1893, Bismarck, ND 58502-1893, for applicant and appellee. Jean R. Mullen (argued), Assistant Attorney General, Attorney General's Office, 900 East Boulevard Avenue, Bismarck, ND 58505-0041, for respondents and appellants.
[556 N.W.2d 663]
Post v. Cass County Social Services
Civil No. 960164
Meschke, Justice.
Cass County Social Services, Cass County Social Service Board, and the Department of Human Services (collectively "Department") appeal from a judgment reversing an order denying medical assistance benefits to Lois Post. Because a preponderance of the evidence supports the Department's finding that Lois had "actually available" assets in excess of a $3,000 asset limitation, we reverse the judgment and reinstate the Department's order.
On February 13, 1984, Lois Post was divorced from her husband, John Post, a veterinarian and Minnesota resident. The decree ordered John to pay Lois $500 per month as part of a marital property settlement. The decree also required John to furnish Lois with a Medicare supplemental insurance policy. John did not make timely payments on these obligations.
In 1989, a Minnesota court found John in contempt for failure to comply with the divorce decree, but allowed him to apportion a lump sum payment of $43,500 he had made earlier to Lois as a prepayment of the property settlement through June 1, 1993. The court ordered John's $500 monthly payments to continue beginning July 1, 1993.
Lois is currently 69 years old and suffers from multiple sclerosis. She was admitted to the Good Samaritan Center in Arthur in March 1991. John did not make the ordered $500 monthly payments beginning July 1, 1993, nor did he pay Lois's Medicare supplemental insurance premiums.
Lois applied for medical assistance in June 1994. Her application was denied because her assets exceeded the $3,000 asset limitation under NDAC 75-02-02.1-26(1). The eligibility worker treated John's outstanding debts for past due Medicare supplemental insurance premiums and $500 monthly property settlement payments as assets available to her. The eligibility worker assigned no value to the past-due insurance premiums, but she determined Lois's "countable assets," including checking and money market accounts, were $6,125 because her property settlement arrearages totaled $5,500.
Lois appealed. An administrative hearing officer recommended that the $5,500 John owed Lois in past-due property settlement payments and the past-due insurance premiums were "available assets" under NDAC 75-02-02.1-25(2) for purposes of determining medical assistance eligibility, and that the Department had properly treated John's debts as assets that placed Lois over the asset limitation. The Department adopted the hearing officer's recommendation, and Lois appealed to the district court.
The district court reversed, concluding that a preponderance of the evidence did not support the Department's finding that the $5,500 arrearage was an asset actually available to Lois. According to the court, Lois's "long history" of "inability to collect the proceeds of the divorce decree," and the "uncertain[ty]" whether further court action against John would "be of any avail or value," demonstrated the $5,500 was not an available asset. The Department appealed.
Our standard of review on appeal from a district court judgment on an administrative agency decision is well settled. We review the Department's decision, not the decision of the district court, and we affirm the Department's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. Lucier v. North Dakota Workers Comp. Bureau, ___ N.W.2d ___, ___ (N.D. 1996). As we said in Ohlson v. Dept. of Human Services, 552 N.W.2d 73, 75 (N.D. 1996), in evaluating the Department's findings of fact, we do not
[556 N.W.2d 664]
make independent findings or substitute our judgment for that of the Department, but we determine only whether the Department reasonably reached its factual conclusions from the weight of the evidence on the entire record.
The Medicaid program is a cooperative federal-state venture designed to afford medical assistance to persons whose income and resources are insufficient to meet the financial demands of necessary care and services. Krueger Estate v. Richland County Soc. Serv., 526 N.W.2d 456, 457 (N.D. 1994). The program is governed by an interplay of federal and state law. See Hecker v. Stark County Social Service Bd., 527 N.W.2d 226, 232 (N.D. 1994). Because Medicaid is intended to be the payer of last resort, other available resources must be used before Medicaid pays for the care of an individual enrolled in the program. Allen v. Wessman, 542 N.W.2d 748, 752 (N.D. 1996). As we noted in In Interest of McMullen, 470 N.W.2d 196, 200 (N.D. 1991), eligibility standards for medical assistance are similar to the eligibility standards for the Aid to Families with Dependent Children (AFDC) program.
For medical assistance eligibility, the Department has defined an asset as "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." NDAC 75-02-02.1-01(3). Under both federal and state law, an asset must be "actually available" to an applicant to be considered a countable asset for determining medical assistance eligibility. Hecker, 527 N.W.2d at 237 (On Petition for Rehearing); Hinschberger v. Griggs County Social Serv., 499 N.W.2d 876, 882 (N.D. 1993); 42 USC 1396a(a)(17)(B); 1 J. Krauskopf, R. Brown, K. Tokarz, and A. Bogutz, Elderlaw: Advocacy for the Aging 11.25 (2d ed. 1993). Yet, "actually available" resources "are different from those inhand." Schweiker v. Gray Panthers, 453 U.S. 34, 48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d 460 (1981) (emphasis in original). NDAC 75-02-02.1-25(2) explains:
Only such assets as are actually available will be considered. Assets are actually available when at the disposal of an applicant, recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available. Assets will be reasonably evaluated. . . .
See also 45 CFR 233.20(a)(3)(ii)(D). As we noted in Hecker, if an applicant has a legal ability to obtain an asset, it is considered an "actually available" resource.
The actual-availability principle primarily serves "to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes non-existent resources to recipients." Heckler v. Turner, 470 U.S. 184, 200, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138 (1985). The focus is on an applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction. See Schrader v. Idaho Dept. of Health and Welfare, 768 F.2d 1107, 1112 (9th Cir. 1985). See also Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970) (invalidating California state regulation that presumed contribution of non-AFDC resources by a non-legally responsible and nonadoptive stepfather or common law husband of an AFDC recipient's mother).
Determining whether an asset is "actually available" for purposes of medical assistance eligibility is largely a fact-specific inquiry depending on the circumstances of each case. See, e.g., Intermountain Health Care v. Bd. of Cty. Com'rs, 107 Idaho 248, 688 P.2d 260, 264 (Ct.App. 1984); Radano v. Blum, 89 A.D.2d 858, 453 N.Y.S.2d 38, 39 (1982); Haynes v. Dept. of Human Resources, 121 N.C.App. 513, 470 S.E.2d 56, 58 (1996). Interpretation of the "actually available" requirement must be "reasonable and humane in accordance with its manifest intent and purpose. . . ." Moffett v. Blum, 74 A.D.2d 625, 424 N.Y.S.2d 923, 925 (1980).
[556 N.W.2d 665]
That an applicant must sue to collect an asset the applicant has a legal entitlement to usually does not mean the asset is actually unavailable. See, e.g., Wagner v. Sheridan County S.S. Bd., 518 N.W.2d 724, 728 (N.D. 1994); Frerks v. Shalala, 52 F.3d 412, 414 (2d Cir. 1995); Probate of Marcus, 199 Conn. 524, 509 A.2d 1, 5 (1986); Herman v. Ramsey Cty. Community Human Serv., 373 N.W.2d 345, 348 (Minn.Ct.App. 1985). See alsoZiegler v. Dept. of Health & Rehab. Serv., 601 So.2d 1280, 1284 (Fla.Ct.App. 1992) ("Funds which might be available only after a lengthy wait for authorization by a judge, who then may or may not grant authorization, simply are not 'available' resources . . . ."). However, showing an inability to collect a judgment from the liable party normally would establish the asset was not actually available. See Probate of Marcus, 509 A.2d at 5 n.4. Because the burden of establishing eligibility for medical assistance benefits rests with the applicant, see Allen, 542 N.W.2d at 752, Lois had the burden of establishing John's debts to her were not "actually available" assets.
The record in this case does not demonstrate Lois would have been unsuccessful in exercising her legal right to enforce the payments mandated by the divorce decree. She successfully sued John in 1989 for failure to make timely payments when the court held him in contempt. Lois's daughter and attorney in fact, Sheryl Donaldson, also testified that, although John's payment history was sporadic, she was able to collect arrearages from John by contacting him and Lois's attorney.
MS. KULESA: And in the past, how has it come that he has to catch up on these payments?
MS. DONALDSON: . . . [S]ometimes I would write to him or I would write an attorney, Mr. Bernardy and ask him to pursue it. . . . [W]e've been to court repeatedly to get things clarified down in Murray County and . . . over the years occasionally some money appears in my mail box.
MS. KULESA: Okay. . . . [W]hen the denial was issued and your father was in arrears, did you contact Cyril Bernardy?
MS. DONALDSON: Yes, many times.
MS. KULESA: And who is Cyril Bernardy?
MS. DONALDSON: He's an attorney that my mother had . . . hired many years ago for . . . pursuing delinquency.
* * * * *
MS. KULESA: And when your father became delinquent this time, was he recontacted?
MS. DONALDSON: Yes.
MS. KULESA: And what did he tell you.
MS. DONALDSON: . . . [H]e'd pursue it. He'd talk to my father's attorney, Mr. Malone, and the payment should restart.
MS. KULESA: And did they?
MS. DONALDSON: . . . [M]aybe a few and then they ended again.
Without evidence that the costs and attorney's fees for collection would effectively reduce the value of the assets below the $3,000 asset limitation, Donaldson's testimony reasonably supports a finding that, when Lois applied for medical assistance, commencement of legal proceedings might not have been necessary to enforce John's obligations under the divorce decree.
Furthermore, the record does not support the district court's concern that John did not have the assets to make the required payments. The divorce decree and the 1989 order holding John in contempt both discuss John's assets and income. These assets included his share of a partnership in a veterinary practice and partial ownership in the building the practice was located. John's assets also included other real property located in Minnesota. Lois presented no evidence indicating that, at the time of her application, these assets were valueless or were no longer owned by John.
Lois asserts the eligibility worker had a duty to verify John had sufficient assets to comply with the divorce decree under North Dakota Department of Human Services Manual, Service Chapter 449-04-04-01 that says in part:
The household has primary responsibility for providing documentary evidence to
[556 N.W.2d 666]
support its statements and resolve any questionable information. . . . If the household is unable to obtain the documentary evidence in a timely manner, or the eligibility worker can do so more expeditiously than the household, the eligibility worker shall offer assistance to the household in obtaining the documentary evidence.
But again, Lois presented no evidence to show, when she applied, that she was unable to obtain a valuation of John's assets or that the eligibility worker was in a better position to do so.
Lois also asserts Ceryes v. St. Louis County Welfare Bd., 402 N.W.2d 209 (Minn.Ct.App. 1987), and NDAC 75-02-02.1-34(2) support her argument that John's outstanding debts to her should be considered "income" rather than "assets" for purposes of determining her medical assistance eligibility. We disagree.
Ceryes dealt with computing a Medicaid recipient's monthly liability after she had already been found eligible for medical assistance. "Recipient liability" is defined as
the amount of monthly net income remaining after all appropriate deductions, disregards, and medicaid income levels have been allowed. All such income must be considered to be available for the payment of medical services provided to the eligible individual or family.
NDAC 75-02-02.1-41.1. See also Krueger, 526 N.W.2d at 457 (increase in collateral monthly benefits received by Medicaid recipient increased amount recipient had to pay nursing home before Medicaid would pay the remainder of the cost).
Although NDAC 75-02-02.1-34(2) says "[i]ncome is actually available . . . when the applicant, recipient, or responsible relative has the lawful power to make the income available or to cause the income to be made available," it also declares:
This subsection does not supersede other provisions of this chapter which describe or require specific treatment of income, or which describe specific circumstances which require a particular treatment of income.
This regulation does not address how outstanding debts will be treated for purposes of determining initial Medicaid eligibility. Rather, when read together with NDAC 75-02-02.1-25(2) and NDAC 75-02-02.1-41.1, it simply requires a recipient of assistance, who has the right to receive income, to take steps to make the income available because it will be attributed to the person in determining recipient liability. NDAC 75-02-02.1-34(2) does not preclude the Department from considering John's outstanding court-ordered debts to Lois as actually available assets for determining Lois's eligibility for medical assistance benefits.
The Department reasonably found from the weight of the evidence on the entire record that John's outstanding debts to Lois under the divorce decree were "actually available" assets that placed her over the $3,000 asset limitation and made her ineligible for medical assistance benefits.
We conclude the Department's findings are supported by a preponderance of the evidence, its conclusions are supported by the findings, its decision is supported by the conclusions, and its decision is in accordance with the law. Accordingly, we reverse the judgment and reinstate the Department's order denying Lois medical assistance benefits.
Herbert L. Meschke
Mary Muehlen Maring
William A. Neumann
Dale V. Sandstrom
Gerald W. VandeWalle, C.J.