2001 ND 169

**Dennis M. SCHMIDT, Appellant,**

v.

**WARD COUNTY SOCIAL SERVICES BOARD and North Dakota Department of Human Services, Appellees.**

**Nos. 20010113, 20010114.**

Supreme Court of North Dakota.

Oct. 16, 2001.

Richard R. LeMay, Legal Assistance of N.D., Minot, ND, for appellant.

Jean R. Mullen, Assistant Attorney General, Bismarck, ND, for appellees.

NEUMANN, Justice.

[¶ 1] Dennis M. Schmidt appeals from a judgment affirming Department of Human Services' decisions denying his household medicaid and food stamp benefits because funds in a conservatorship established for his seven-year-old son, Bo, were available assets which exceeded the eligibility requirements for either program. We hold Schmidt failed to establish the conservatorship funds were not available assets for purposes of medicaid and food stamp eligibility, and we affirm.

I

[¶ 2] Schmidt and Bo's mother were divorced. When Bo's mother died, Bo received about $25,000 as a beneficiary under her insurance policy and he began living with Schmidt. Schmidt applied to the court to establish a conservatorship for the insurance proceeds. In September 1999, the appointing court established a conservatorship for the insurance proceeds and named Schmidt the conservator. The letters of conservatorship state that, unless otherwise ordered by the appointing court, the conservator shall disburse the conservatorship funds to Bo at age 23, or sooner under a schedule requiring disbursement of one-fourth of the funds when Bo graduates from high school and enrolls in college, one-third of the remaining funds when he enrolls in his second year of college, one-half of the remaining funds when he enrolls in his third year of college, and the balance when he enrolls in his fourth year of college.

[¶ 3] When the appointing court established the conservatorship, Bo was receiving medicaid benefits as a dependent child who was deprived due to his mother's death, and Schmidt was included in the medicaid unit. Schmidt and Bo were also receiving food stamps. In March 2000, Ward County completed recertification of the household's eligibility for medicaid and food stamp benefits. Ward County notified Schmidt it was terminating the household's medicaid and food stamp benefits because the household's available assets, including the conservatorship funds, exceeded the eligibility requirements for either program.

[¶ 4] Schmidt appealed to the Department. After an evidentiary hearing, an administrative law judge ("ALJ") recommended affirming Ward County's decisions to terminate the household's medicaid and food stamp benefits. The Department adopted the ALJ's recommendations, and the district court affirmed the Department's decisions.

II

[¶ 5] Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm an adminis-

trative agency's decision if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, its decision is in accordance with the law and does not violate the claimant's constitutional rights, and its rules or procedures have not deprived the claimant of a fair hearing. *Eckes v. Richland County Soc. Servs. Bd.*, 2001 ND 16, ¶ 6, 621 N.W.2d 851. In reviewing an agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency, rather we determine only whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence. *Id.* An agency's decision on questions of law is fully reviewable by this Court. *Id.*

### III

[¶ 6]  We initially consider the Department's decision to deny the household medicaid benefits. The Medicaid program was enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and is a cooperative federal-state program designed to provide medical care to needy persons. *See Kryzsko v. Ramsey County Soc. Servs.*, 2000 ND 43, ¶ 6, 607 N.W.2d 237; *Wahl v. Morton County Soc. Servs. Bd.*, 1998 ND 48, ¶ 10, 574 N.W.2d 859; *Allen v. Wessman*, 542 N.W.2d 748, 752 (N.D.1996). States are not required to participate in the Medicaid program, but if a state elects to participate, the federal government shares the cost of the program if the state's plan complies with the requirements of federal law. *Wahl* at ¶ 10. North Dakota has elected to participate in the Medicaid program and has designated the Department to implement it. N.D.C.C. § 50–24.1–01.1. Under the au-

thority conferred by N.D.C.C. § 50–24.1–04, the Department has adopted rules for determining medicaid eligibility. *See* N.D. Admin. Code ch. 75–02–02.1.

[¶ 7]  Schmidt argues the Department erred in deciding Bo's conservatorship funds were an available asset for purposes of determining the household's medicaid eligibility. In denying the household medicaid benefits, the Department found the conservatorship was a legal device similar to a revocable trust; Bo was considered to have established the conservatorship with his assets; Schmidt could petition the appointing court to amend the conservatorship and to direct distribution of the conservatorship funds at any time; the appointing court could remove the limitations on the conservatorship and direct distribution of the funds at any time; the conservatorship funds were available to Bo for determining his medicaid eligibility; Bo was not eligible for medicaid benefits because his available assets exceeded the $6,000 limit allowed for a two-person medicaid unit; Schmidt's eligibility for medicaid benefits arose solely because Bo lived with Schmidt and Bo was a dependent child who was deprived due to his mother's death; Schmidt did not claim any independent basis for medicaid eligibility; and Schmidt was not eligible for medicaid benefits.

[¶ 8]  Schmidt argues the Department's decision effectively makes Bo responsible for supporting his father. Schmidt argues he is obligated to support Bo and Bo is not required to support him. However, Schmidt does not claim he is separately eligible for medicaid benefits, and his claim arises solely because Bo lived with Schmidt as part of a two-person medicaid unit[1] and Bo was eligible for

---

1. Under N.D. Admin. Code § 75–02–02.1–    01(18), medicaid unit "means an individual, a

medicaid benefits as a dependent child who was deprived due to his mother's death. *See* N.D. Admin. Code § 75–02–01.2–14. Thus, the household's eligibility for medicaid benefits requires consideration of Bo's eligibility for benefits.

[¶ 9] An applicant or guardian of an applicant for medicaid benefits must prove eligibility. N.D. Admin. Code § 75–02–02.1–02.1; *Wahl,* 1998 ND 48, ¶ 16, 574 N.W.2d 859; *Allen,* 542 N.W.2d at 752. An applicant without sufficient assets to meet the costs of necessary medical care and services generally is eligible for medicaid benefits. *See* N.D.C.C. § 50–24.1–02. An applicant is eligible for medicaid benefits if the total value of the medicaid unit's available assets do not exceed $6,000 for a two-person unit. N.D. Admin. Code § 75–02–02.1–26(2). Assets are "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." N.D. Admin. Code § 75–02–02.1–01(3). Generally, all assets must be considered in determining medicaid eligibility. N.D. Admin. Code § 75–02–02.1–25(1). However, certain assets are exempt from consideration and certain types of property interests are excluded. *See* N.D. Admin. Code §§ 75–02–02.1–25 through 75–02–02.1–28.

[¶ 10] Property held in a trust is considered an asset to the extent the property is actually available to a medicaid applicant or recipient. *See* N.D. Admin. Code §§ 75–02–02.1–25, 75–02–02.1–31 and 75–02–02.1–31.1. Under medicaid law, an individual is considered to have established a trust if the individual's assets are used to form all or part of the corpus of the trust

and if the trust is established by "a court ... with legal authority to act in place of or on behalf of the individual or the individual's spouse." N.D. Admin. Code § 75–02–02.1–31.1(2)(a)(3); 42 U.S.C. § 1396p(d)(2)(A)(iii). The rules for trusts apply regardless of the purpose for which the trust is established and whether there are any restrictions on the use of distributions from the trust. N.D. Admin. Code § 75–02–02.1–31.1(2)(c); 42 U.S.C. § 1396p(d)(2)(C). Under medicaid law, a trust includes "any legal instrument or device, whether or not written, which is similar to a trust." N.D. Admin. Code § 75–02–02.1–31.1(6)(b). *See* 42 U.S.C. § 1396p(d)(6).

[¶ 11] The property interest at issue in this case is the conservatorship funds. .Chapter 30.1–29, N.D.C.C., deals with conservatorships and is derived from Uniform Probate Code § 5–401 *et seq.* Chapter 30.1–29, N.D.C.C., offers a system of protective proceedings to provide for management of a minor's property. *See* General Editorial Board Comment, Article V of Uniform Probate Code. The relationship between a conservator and the protected minor is a fiduciary relationship similar to the relationship between a trustee and a beneficiary. *See* 39 Am.Jur.2d *Guardian and Ward* § 2 (1999). A conservator has the powers of a trustee. N.D.C.C. § 30.1–29–24(1). In exercising a conservator's powers, the conservator acts as a fiduciary under the standard of care applicable to trustees. N.D.C.C. § 30.1–29–17. Conservators have the status of trustees, and in the management of property, they both have a similar relationship to the appointing court. *See* General Edi-

---

married couple, or a family with children under twenty-one years of age ... whose income and assets are considered in determining eligibility for any member of that unit." An applicant or recipient who is also a care-

taker of children under twenty-one years of age may select the children who will be included in the medicaid unit. N.D. Admin. Code § 75–02–02.1–08.

torial Board Comment, Article V of Uniform Probate Code. For example, unless the appointing court directs otherwise, a conservator must account annually to the court for administration of the "trust." N.D.C.C. § 30.1–29–19. The appointment of a conservator vests in the conservator title as "trustee" to all the protected person's property. N.D.C.C. § 30.1–29–20. Under N.D.C.C. § 30.1–29–16, anyone interested in the welfare of a protected person may petition for an accounting for the administration of the "trust." These statutory provisions contemplate that a conservatorship bears many similarities to a trust, and we agree with the Department that a conservatorship is a legal device similar to a trust within the meaning of the applicable law for determining medicaid eligibility.

[¶ 12] Schmidt nevertheless argues the conservatorship funds are not available to the household because legal impediments preclude access to the funds except for Bo's college education.

[¶ 13] In determining medicaid eligibility, only assets "actually available" to the applicant are considered. N.D. Admin. Code § 75–02–02.1–25(2). Actually available assets are different from those in hand. *Post v. Cass County Soc. Servs. Bd.*, 556 N.W.2d 661, 664 (N.D.1996). Under N.D. Admin. Code § 75–02–02.1–25(2):

> Assets are actually available when at the disposal of an applicant, recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available.

[¶ 14] An asset to which an applicant has a legal entitlement is not unavailable simply because the applicant must initiate legal proceedings to access the asset. *Post*, 556 N.W.2d at 665. In determining whether an asset is actually available, the central issue is the applicant's "actual and practical ability to make an asset available as a matter of fact, not legal fiction." *Id.* at 664. In *Post* at 665–66, we upheld an administrative determination that past-due property settlement payments owed under a divorce decree were actually available to a disabled applicant who was legally entitled to the payments under the decree and who had successfully sued to enforce the decree in the past.

[¶ 15] We have recognized a minor's personal injury award should be left intact until the minor becomes an adult, and parents have the primary obligation to support their children. *See Dahner v. Daner*, 374 N.W.2d 604, 605 (N.D.1985). However, in *Dahner* at 606, we said any rule precluding invasion of a minor's funds is limited by common sense, and in emergency situations or when no other alternative exists, disbursement may be necessary. We have also recognized the Department decides welfare eligibility, and a supervising or appointing court decides the necessity for release of funds held for a minor. *See In Interest of McMullen*, 470 N.W.2d 196, 201–02 (N.D. 1991). Welfare regulations reflect a basic social policy that welfare recipients must use their own available income and resources before shifting the burden for their support to the public. *McMullen* at 201. In *McMullen* at 201, we said the Department may consider the availability of a minor's personal injury settlement in deciding welfare eligibility. The Department's decision regarding the availability of a settlement and a supervising court's decision on the necessity of releasing a

minor's funds are two different issues, and in deciding the necessity of releasing a minor's funds, the supervising court's decision must be made without regard to the availability of welfare benefits because social policy dedicates welfare benefits to the truly needy. *Id.* at 201–02.

[¶ 16] Here, at Schmidt's request, the appointing court established the conservatorship with Bo's insurance proceeds, and "unless otherwise ordered by the Court," authorized Schmidt, the conservator, to disburse the funds to Bo at age 23, or sooner for his college education. Under N.D.C.C. § 30.1–29–16, a conservator may petition the appointing court for instructions regarding the conservator's fiduciary responsibilities, and any person may petition the court for an order regarding distribution of the estate. The appointing court specifically reserved the power to amend the conservatorship, and the court has not decided Bo's needs and the necessity to expend funds from the conservatorship for his support. Under *Dahner* and *McMullen,* the appointing court must make that determination without regard to the availability of public assistance benefits. Schmidt did not present evidence to show the appointing court will not exercise its authority to expend funds from the conservatorship for Bo's medical needs. Under these circumstances, a reasonable person could reasonably conclude Bo's conservatorship funds are available to him, and the Department's decision that the funds are available is supported by a preponderance of the evidence. Schmidt's claim for medicaid benefits arises solely because Bo lived with Schmidt as part of

the two-person medicaid unit and Bo is a dependent child who is deprived due to his mother's death. *See* N.D. Admin. Code §§ 75–02–01.2–14 and 75–02–02.1–05(3)(a). The household is not eligible for medicaid benefits because the conservatorship funds are available to Bo and exceed the maximum asset limit of $6,000 allowed for a two-person medicaid unit. We therefore affirm the Department's decision denying the household medicaid benefits.[2]

### IV

[¶ 17] Schmidt argues Bo's conservatorship funds are not available for purposes of determining the household's food stamp eligibility. In denying the household food stamps, the Department found Bo's assets must be counted toward the asset limits for the entire household; the conservatorship funds were similar to a revocable trust and were not inaccessible because the appointing court had authority to distribute the conservatorship funds at any time for the best interests of Bo and members of his household; Schmidt failed to establish the appointing court would not exercise its authority to distribute funds to provide food for the household; the funds are an available asset in determining the household's eligibility for food stamps; and Schmidt is not eligible to receive food stamp benefits because the household's total nonexempt assets, including the conservatorship funds, exceed the $2,000 asset limit for a household.

[¶ 18] The food stamp program is a federal program designed to raise nutrition levels among low-income households.

---

2. Schmidt argues the Department's eligibility decision can be no more restrictive than under 1972 law because North Dakota is a § 209(b) state which opted out of applying Supplemental Security Income criteria for medicaid eligibility. *See Wahl,* 1998 ND 48, ¶¶ 20–26, 574 N.W.2d 859 (explaining

§ 209(b) status). However, Schmidt has not identified how the conservatorship funds were unavailable under the medicaid law in effect in 1972, and he presented no evidence at the administrative proceeding to establish the household's eligibility under the law in effect in 1972.

*See* 7 U.S.C. § 2011. The program is administered by county social service boards, *see* N.D.C.C. § 50.01.02–03(4), and supervised by the Department. *See* N.D.C.C. § 50–06–05.1(17). Eligibility for food stamps is governed by uniform federal standards. *See* 7 U.S.C. § 2014(b); 7 C.F.R. § 273.8(a) (2001). For purposes of food stamp eligibility, a household includes parents living with their natural children. 7 U.S.C. § 2012(i); 7 C.F.R. § 273.1(a) (2001). In order for a household to be eligible for food stamps, the maximum allowable resources, including both liquid and nonliquid assets, of all members of the household must not exceed $2,000. 7 C.F.R. § 273.8(b) (2001). *See Lyng v. Castillo,* 477 U.S. 635, 638–39, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986) (upholding requirement that food stamp eligibility be determined on a household basis, rather than individual basis). For purposes of determining food stamp eligibility, Bo is considered part of the household and his resources must be counted toward the household's resource limits.

[¶ 19] In calculating a household's resources, 7 C.F.R. § 273.8(c) (2001) includes certain liquid and nonliquid resources and any other property not specifically excluded under 7 C.F.R. § 273.8(e) (2001). Under 7 C.F.R. § 273.8(e)(8)(i) (2001), resources such as an irrevocable trust, which are not accessible to the household during the period of expected food stamp certification are excluded from a household's resources and are not available to the household for purposes of food stamp eligibility.

[¶ 20] This conservatorship is a legal device similar to a trust. Under N.D.C.C. § 30.1–29–16, the conservator may petition the appointing court for instructions regarding the conservator's fiduciary responsibilities, and any person may petition the court for an order regarding distribution. The conservatorship is an ongoing proceeding in which the appointing court may order disbursement of the funds at any time. *See* N.D.C.C. § 30.1–29–16. The appointing court has authority to remove limitations on the conservator and to direct distributions by the conservator. *See* N.D.C.C. § 30.1–29–16. Here, the appointing court specifically reserved its authority to amend the conservatorship. The court has not decided Bo's nutritional needs, and Schmidt did not present evidence to show the appointing court will not exercise its authority to expend funds from the conservatorship for those needs. *See Jackson v. Jackson,* 857 F.2d 951, 954–55 (4th Cir. 1988) (stating that requirement to petition court to sell property was not substantial legal or practical impediment and property was available for food stamp eligibility). A reasoning mind could reasonably conclude Bo's conservatorship is similar to a revocable trust during the period of expected food stamp certification and is not inaccessible to the household. The Departments's decision that the conservatorship funds are an available resource is therefore supported by a preponderance of the evidence. Because the conservatorship funds are considered an available resource, the household exceeded the $2,000 resource limit for purposes of determining food stamp eligibility. We therefore affirm the Department's decision denying the household food stamps.

V

[¶ 21] We affirm the district court judgment.

[¶ 22] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.