2003 ND 195

**Jay LINSER, Appellee,**

v.

**OFFICE OF ATTORNEY GENERAL, Department of Human Services, and Stutsman County Social Services, Appellants.**

No. 20030184.

Supreme Court of North Dakota.

Dec. 19, 2003.

Steven E. McCullough, Ohnstad Twichell, P.C., West Fargo, for appellee.

Jean R. Mullen, Assistant Attorney General, Bismarck, for appellants.

MARING, Justice.

[¶ 1] The Department of Human Services ("Department") appealed from a district court judgment reversing a Department order terminating Medicaid benefits

to Jay Linser because his available assets exceed the maximum allowed. We conclude a preponderance of the evidence supports the Department's finding that Linser failed to establish the assets in the Jay Linser Special Needs Trust are not "actually available" to him and, consequently, his assets exceed the maximum allowable assets for receipt of Medicaid benefits. We, therefore, reverse the district court judgment and reinstate the Department's order.

I

[¶ 2]   The parties have stipulated to the relevant facts. Jay Linser is a developmentally disabled person. His father, Howard Linser, has been appointed his guardian and conservator. Romeo H. Chaput was Jay Linser's grandfather. In 1972 Romeo Chaput established what the parties refer to as the Romeo Chaput Trust, for Jay Linser's benefit. In 1990, Romeo Chaput executed his last will and testament and therein devised the bulk of his estate equally among his four grandchildren, including Jay Linser. The will provided that Jay Linser's devise would be placed in trust with First Trust Company of North Dakota.[1] Romeo Chaput died on August 2, 1991. Between September 1993 and May 1995 approximately $65,000 was distributed from the estate into the Romeo Chaput Trust.

[¶ 3]   On August 18, 1997, Howard Linser, as Jay Linser's guardian, established the Jay Linser Special Needs Trust. After this trust was established, the funds in the Romeo Chaput Trust were transferred to it and additional amounts from the Romeo Chaput estate were distributed and also placed into the Jay Linser Special Needs Trust. A total of $181,135.92 was

distributed from the Romeo Chaput estate to the Jay Linser Special Needs Trust.

[¶ 4]   Jay Linser, who had been receiving Medicaid benefits from the Department, was notified that effective October 22, 2001, his Medicaid benefits would be discontinued because his assets exceeded the $3,000 maximum allowed for Medicaid beneficiaries. The Department's position was that distributions from the Romeo Chaput estate were improperly placed into the Jay Linser Special Needs Trust, a discretionary trust, instead of being distributed to the Romeo Chaput Trust, a support trust; therefore, the assets in the Jay Linser Special Needs Trust were actually available to Jay Linser for purposes of disqualifying him from receiving further Medicaid benefits.

[¶ 5]   Linser requested a formal review of the decision. After a hearing, the Department upheld its decision to terminate Medicaid benefits, and Linser appealed to the district court. The district court concluded assets in the Jay Linser Special Needs Trust were not actually available to him, and the court reversed the Department's order terminating Medicaid benefits for Jay Linser.

II

[¶ 6]   When a district court decision reviewing an administrative agency decision is appealed to our Court, we review the decision of the agency and look to the record compiled before it. *Kryzsko v. Ramsey County Soc. Servs.*, 2000 ND 43, ¶ 5, 607 N.W.2d 237. Our review of an agency decision is governed by N.D.C.C. § 28–32–46, which requires us to affirm unless:

1.   First Trust North Dakota was the successor in interest to Merchants National Bank and Trust Company of Fargo, and U.S. Bank is the successor in interest to First Trust North Dakota.

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

When reviewing an agency's findings of fact, we determine whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence based on the entire record. *Opp v. Ward County Soc. Servs. Bd.,* 2002 ND 45, ¶ 8, 640 N.W.2d 704. The agency's decisions on questions of law are fully reviewable by this Court. *Id.*

### III

[¶ 7] North Dakota participates in and has designated the Department to implement the Medicaid program, which is a cooperative federal-state program enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* and is designed to provide medical care to needy persons. Under the authority conferred by N.D.C.C. § 50–24.1–04, the Department has adopted rules for determining Medicaid eligibility. An applicant or guardian of an applicant for Medicaid benefits must prove eligibility. *Schmidt v. Ward County Soc. Servs. Bd.,* 2001 ND 169, ¶ 9, 634 N.W.2d 506. An applicant without sufficient assets to meet the cost of necessary medical care and services is generally eligible for Medicaid benefits. *Id.* A one-person unit is eligible for Medicaid benefits if the total value of that person's assets does not exceed $3,000. N.D. Admin. Code § 75–02–02.1–26(1). Under both federal and state law, an asset must be "actually available" to an applicant to be considered a countable asset for determining Medicaid eligibility. *Opp,* 2002 ND 45, ¶ 10, 640 N.W.2d 704. Section 75–02–02.1–25(1), N.D. Admin. Code, provides, in part:

> All actually available assets must be considered in establishing eligibility for medicaid. Assets are actually available when at the disposal of an applicant, recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available

Property held in a trust is considered an asset to the extent the property is actually available to a Medicaid applicant or recipient. *Schmidt,* 2001 ND 169, ¶ 10, 634 N.W.2d 506. Assets in a support trust are deemed to be available to the applicant and considered to be part of the applicant's assets in determining Medicaid eligibility. *Kryzsko,* 2000 ND 43, ¶ 8, 607 N.W.2d 237. However, assets in a discretionary trust, wherein the trustee has uncontrolled dis-

cretion over payment to the beneficiary, are considered available assets only to the extent amounts are actually distributed to the beneficiary. *See Hecker v. Stark County Soc. Serv. Bd.,* 527 N.W.2d 226, 230 (N.D.1994).

[¶ 8] While the Department recognizes the Jay Linser Special Needs Trust is a discretionary trust and the undistributed assets therein are not actually available to Jay Linser, the Department argues that assets from the Romeo Chaput estate should never have been distributed from the estate or transferred from the Romeo Chaput Trust to the Jay Linser Special Needs Trust. The Department asserts the assets should have been placed in the Romeo Chaput Trust, which is a support trust whose assets would be considered available to Jay Linser for determining Medicaid eligibility. The Department asserts that because Jay Linser has a legal entitlement to have the funds which are currently in the Jay Linser Special Needs Trust placed in the Romeo Chaput support trust, the assets should be deemed actually available to Jay Linser.

[¶ 9] The administrative law judge agreed with the Department's position and made the following specific findings regarding the availability of those assets:

There is a reasonable legal question whether U.S. Bank as trustee of the Romeo Chaput Trust could lawfully transfer the assets of the Romeo Chaput Trust to itself as trustee of the Jay Linser Special Needs Trust to be held and administered as the assets of the Jay Linser Special Needs Trust.... The basis for that action ... was that the will of Romeo Chaput did not designate a particular trust or refer to any trust agreement, and, there being at the time two trusts in existence for the benefit of Jay Linser, U.S. Bank as trustee could lawfully choose which trust it would fund

with the distributions by the Estate of Romeo H. Chaput in trust for the benefit of Jay Linser. But that rationale ignores the fact that the Romeo Chaput Trust was in existence at the time that Romeo Chaput executed his will in 1990, having been created in 1972, while the Jay Linser Special Needs Trust was not created until 1997—long after the death of Romeo Chaput. It is difficult to understand the argument that in making his will Romeo H. Chaput contemplated a distribution in trust for the benefit of Jay Linser to be held and administered pursuant to a trust agreement which did not exist and which he did not later act to create.

. . . .

The provisions of the Jay Linser Special Needs Trust are plainly more restrictive for the application of the assets for Jay Linser's use and benefit than the Romeo Chaput Trust, and, arguably, the transfer of the assets from the Romeo Chaput Trust to the Jay Linser Special Needs Trust was therefore adverse to Jay Linser's interests.... It cannot be determined by the evidence of record whether a cause of action can be stated against the trustee and any other party who participated to effect the transfer of assets by the trustee of the Romeo Chaput Trust and payment to the trustee of the Jay Linser Special Needs Trust....

In this matter, for example, Linser, as the guardian of Jay Linser, the applicant for Medicaid benefits, is also the person who, acting for and on behalf of Jay Linser, established the Jay Linser Special Needs Trust as an alternative to the Romeo Chaput Trust, and is the father of Jay Linser's sisters and brother who will benefit by the preservation of the assets of the Jay Linser Special Needs Trust which are not used by and for the benefit of Jay Linser.... This matter

requires separate counsel for Jay Linser, with demonstrated experience and ability for the required analysis, to consider and evaluate the remedies which might be available to obtain access to assets which appear to have been restricted by the actions of the trustee and the provisions of the Jay Linser Special Needs Trust....

Considering the evidence of record, Linser has not provided a credible analysis and evaluation to prove that there are no reasonable legal means by which the assets distributed by the Estate of Romeo H. Chaput in trust for the benefit of Jay Linser and paid to the Jay Linser Special Needs Trust can be made available for the use and benefit of Jay Linser. The Department's decision that Linser has failed to prove that the assets of the Jay Linser Special Needs Trust are not "actually available" to Jay Linser within the meaning of N.D. Admin.Code § 75–02–02.1–25(2) must be sustained.

[¶ 10] The Department adopted the findings and recommendation of the ALJ, but on appeal the district court viewed the record differently:

From the evidence of record there seems to be no practical method to make the funds available that can be expected to be legally accomplished if attempted by Linser. [The ALJ] ruled that based on that evidence Linser failed to provide "a credible analysis and evaluation to prove there are no reasonable legal means" that the trust funds are not available.... The result of this ruling is that the Department is able to claim that there must be some way that these funds are available to Linser, and that he is required to make an evaluation of the facts, and prove there isn't any way. That is speculative, and is not related to

"practical ability" to make an asset available.

[¶ 11] Determining whether an asset is "actually available" for purposes of Medicaid eligibility is largely a fact-specific inquiry depending on the circumstances of each case. *Post v. Cass County Soc. Servs.*, 556 N.W.2d 661, 664 (N.D.1996). Interpretation of the "actually available" requirement must be reasonable, and the focus is on the applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction. *Opp*, 2002 ND 45, ¶ 11, 640 N.W.2d 704. However, this Court has held that an asset to which an applicant has a legal entitlement is not unavailable simply because the applicant must initiate legal proceedings to access the asset. *Schmidt*, 2001 ND 169, ¶ 14, 634 N.W.2d 506. While Linser's legal entitlement to have monies in the Jay Linser Special Needs Trust restored to the Romeo Chaput Trust is not certain, there is a colorable claim in that regard. It is appropriate for an agency to find that assets which the applicant has a legal entitlement to are actually available to him where the record fails to demonstrate the applicant would be unsuccessful in exercising a legal right to obtain them. *Post*, 556 N.W.2d at 665.

[¶ 12] The ALJ found that Linser, who carries the burden of demonstrating eligibility for Medicaid benefits, has not provided a credible analysis and evaluation to prove there are not reasonable legal means to have the assets in the Jay Linser's Special Needs Trust made available for his current use and benefit. The nature of Linser's legal entitlement to the assets is similar to the legal entitlement of the estate in *Probate of Marcus*, 199 Conn. 524, 509 A.2d 1, 5 (1986). In that case, the Supreme Court of Connecticut concluded that where the conservatrices were personally liable for unauthorized dispositions

from an estate, the estate's legal right to have them restore the unauthorized dispositions to the estate rendered the improperly distributed gifts "actually available" assets for determining Medicaid eligibility. *Id.* The court held the assets were actually available even though the gifts had not yet been returned to the estate by the wrongdoing conservatrices. *Id.* The Supreme Court of Connecticut, upon finding the invalidated gifts were "actually available" assets, noted:

> The mere fact that the conservatrices are personally liable for the unauthorized dispositions does not necessarily mean that these funds are "available" for purposes of determining eligibility for medicaid assistance.... The state would not be justified in denying benefits in the event that the conservatrices are unable to satisfy a judgment against them, or if for any other reason the funds due the estate are not actually available for the maintenance and support of the ward.... The conservatrices have never alleged that they are financially unable to restore the estate, and therefore we need not consider the issue further on this appeal.

*Probate of Marcus*, 509 A.2d at 5, n. 4.

[¶ 13] Recognizing the constitutional doctrine of separation of powers, our standard of review in cases such as this does not allow us to make independent findings of fact or to substitute our judgment for that of the agency factfinder. *Wagner v. Sheridan County Soc. Servs. Bd.*, 518 N.W.2d 724, 729 (N.D.1994). The record supports the finding of the ALJ that Linser has failed to show there is not an actual and practical ability to make these assets available to him.

[¶ 14] We conclude that a reasoning mind could reasonably find by a preponderance of the evidence that Linser has a legal entitlement to have the assets in the Jay Linser's Special Needs Trust made available to him currently; therefore, those assets are actually available assets for determining Medicaid eligibility. We hold the Department's decision that Linser's assets exceed the maximum allowable is supported by its findings and that its findings are supported by a preponderance of the evidence. We, therefore, reverse the judgment of the district court and reinstate the Department's order terminating Medicaid benefits for Linser.

[¶ 15] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.